(51 Misc. Rep. 383.)

## PEOPLE v. WILLIAMS

(Court of Special Sessions of First Division of City of New York. August, 1906.)

CONSTITUTIONAL LAW—LABOR LAWS—POLICE POWER—FREEDOM OF CONTRACT.
     Heydecker's Gen. Laws, p. 2619, c. 32, art. 6, § 77, prohibiting any female from being employed, permitted, or suffered to work in any factory in the state before 6 o'clock in the morning or after 9 o'clock in the evening of any day, etc., was not a valid exercise of police power in the interest of the health of female employés and the public welfare, but was an unconstitutional infringement on the female's liberty to contract for her own labor guarantied by Const. 1894, art. 1, § 6.

     [Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 165.]

David L. Williams was convicted of permitting a female to be employed in a factory under his charge after 10 o'clock p. m., and he moved an arrest of judgment. Motion granted, and conviction annulled.

Argued before DEUEL, McKEAN, and OLMSTEAD, JJ.

Julius M. Mayer, Atty. Gen. (Danforth E. Ainsworth, Deputy Atty. Gen., and William Chilvers, of counsel), for the People.

House, Grossman & Vorhaus and Henry B. Corey (Frederick B. House, of counsel), for defendant.

OLMSTED, J. At 20 minutes after 10 o'clock on the night of January 31, 1906, a deputy factory inspector visited the bookbinding establishment of the defendant, No. 437 Eleventh avenue, in the county of New York, and there found one Katie Mead, a female, more than 21 years of age and a citizen, employed in "gathering," to wit, assembling printed papers in the form of a book or pamphlet for bind-

100 N.Y.S.—22

ing purposes. The defendant, one of the proprietors of the establishment, was present and in charge of the work and the employés, and among them were several other women. There is no pretext that the building was insecure, the light bad, ventilation defective, or the general sanitary condition deficient. In these respects the deputy testified: "It is the best factory of the kind in New York City." The information upon which the defendant was tried and convicted charges a misdemeanor under section 77, art. 6, entitled "Factories" of the general laws relating to labor (Heydecker's Gen. Laws, p. 2619, c. 32), in that he employed, permitted, and suffered the said Katie Mead to work in that factory after 9 o'clock at night on the date specified. So much of the section as is pertinent to the present inquiry is as follows:

"No minor under the age of eighteen years and no female shall be employed, permitted or suffered to work in any factory in this state before six o'clock in the morning or after nine o'clock in the evening of any day, or for more than ten hours in any one day, except to make a shorter work day of the last day of the week; or for more than sixty hours in any one week or more hours in one week than will make an average of ten hours per day for the whole number of days so worked."

The remainder of the paragraph makes provision for a schedule of the hours per day during which each person shall be employed, and grants permission for them to begin work after 6 o'clock and to quit before 9 o'clock, "but they shall not otherwise be employed, permitted or suffered to work in such factory, except as stated therein."
Section 384*l* of the Penal Code provides that:

"Any person who violates or does not comply with (1) the provisions of article 6 of the labor law relating to factories * * * is guilty of a misdemeanor."

The establishment of the defendant, where Katie Mead was working, was a factory within the statutory definition, viz.:

"The term 'factory' when used in this chapter shall be construed to include also any mill, workshop or other manufacturing or business establishment where one or more persons are employed at labor." Article 1, § 2 (Heydecker's Gen. Laws, p. 2601, c. 32).

No issue of fact was raised on the trial. The people called the deputy inspector to prove the bare facts of employment after prohibited hours in a factory and defendant's connection therewith and rested. The defendant offered no evidence and was thereupon found guilty. Upon a motion in arrest of judgment defendant's counsel contends, first, that section 77 of the labor law, under which the conviction was had, is in contravention to the fourteenth amendment of the Constitution of the United States, in that it is an infringement of the privileges and immunities of the citizen of the United States and denies to women the equal protection of the laws; second, that it contravenes article 1, § 6, of the state Constitution, in that it deprives a citizen of her liberty and property without due process of law. The question of the constitutionality of the statute having arisen in a way permitting an appeal by either side, it is as much a duty of this court to pass thereon as it is, upon evidence, to pronounce judgment of acquittal or conviction.

To labor and employ labor are inherent and inalienable rights of our citizens, and cannot be taken away, in whole or in part, unless up-

on the broad ground of public good, which must be apparent and cannot be predicated on legislative dictum. It may be stated as a well-settled legal proposition that the right to labor and to contract for that labor is both a liberty and a property right. When, therefore, the Legislature enacts a statute such as that under consideration, it must be admitted that it has infringed in the enactment the rights which are very clearly accorded by the Constitution to the individual citizen. The people, therefore, are called upon to justify this invasion, and there is but one plea of justification, the statute was enacted to protect the comfort, welfare, and safety of the whole people, and the individual must suffer this curtailment of his granted rights in the interest of the common good. In the case under consideration the right of the employed and the right of the employer are equally involved. Nothing to the contrary appearing, it must be assumed that the woman was a willing worker for a willing employer, and that the result was mutually satisfactory and profitable. No argument is needed to show that both the employer and the employed have been restricted in their rights by the law in question. Was this restriction within the constitutional power of the Legislature? The provision of the state Constitution invoked by the defendant is:

"No person shall * * * be deprived of life, liberty or property without due process of law." Article 1, § 6.

A correlated section is section 1 of the same article:

"No member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof unless by the law of the land or the judgment of his peers."

The Supreme Court of Illinois in Ritchie v. People, 155 Ill. 98, 40 N. E. 454, 29 L. R. A. 79, 46 Am. St. Rep. 315, held a law of that state which provided that "no female shall be employed in a factory or workshop more than eight hours in any one day or forty-eight hours in any one week," to be unconstitutional, because it violated the provisions of a section of the Illinois Constitution almost identical in language with that of article 1, § 6 of the New York state Constitution. No case exactly in point with that at bar has been cited by counsel. The attention of the court has been called to cases decided in the states of Massachusetts, Illinois (Ritchie v. People, supra), Nebraska, and Washington. In these cases the issue was the constitutionality of statutes limiting the number of hours in any one day or week during which women might be employed at labor in a factory. That is not the issue here. While the statute under consideration fixes a limitation as to daily and weekly employment, this action is brought under a provision which prohibits the employment of women after 9 o'clock p. m. and before 6 o'clock in the morning, and the only evidence of such employment in this case is that at the hour of 10:20 p. m. a woman was found so employed in defendant's factory. The information of the district attorney charges the employment even less explicitly. How long the woman worked on the day in question, how long she worked that week, or how many hours of labor she had contracted to perform on the night she was found working in the factory—none of these things appear. The sole fact before us is that a woman was em-

ployed in factory work for a few minutes during hours when the statute declares it was unlawful to so employ her.

The first legislative enactment in this state looking to the protection of women employed in factories was chapter 409, p. 629, Laws of 1886. This statute formed the basis of what is now the Factory Law of the state. Prior thereto the lawmaking body had passed acts (chapter 856, p. 2138, Laws of 1867, and chapter 385, p. 919, Laws of 1870) in which women were not referred to as a class, but might be included in the general designation of "mechanics, workingmen and laborers." It will be noted that the provisions of chapter 409, p. 629, Laws of 1886, only relate to the employment of women under the age of 21 years (minors, and as such, wards of the state). It did not prevent their employment at night. Not until 1889 (chapter 560, p. 752, Laws of 1889) was any inhibition against nightwork injected into the statute. It was continued in chapter 398, p. 753, Laws of 1890, and chapter 673, p. 1372, Laws of 1892, and in the act of 1897, when the several acts relating to labor were codified and became chapter 32, p. 2600, of the General Laws. No attempt was made to restrict the rights of women other than those of minor wards of the state—women under the age of 21 years. It was not until 1899 that the Legislature undertook to enact that "no woman" should work in a factory after 9 p. m. and before 6 o'clock a. m., and it is under this statute that the criminal action we are now considering was brought.

The general regulation of the hours of labor of the working classes in this state is to be found in section 3 of this same chapter (Heydecker's Gen. Laws, p. 2601, c. 32), which reads in part as follows:

"Eight hours shall constitute a legal day's work for all classes of employés in this state, except those engaged in farm and domestic services, unless otherwise provided by law. This section does not prevent an agreement for overwork at an increased compensation, except upon work by or for the state or a municipal corporation or by contractors or subcontractors therewith."

The other provisions of law modifying the provisions of this section are to be found in the same chapter. Section 5 permits employés of certain street surface and elevated railroads to work 10 hours a day, and in certain emergencies to perform extra labor for an added compensation. Section 6 permits employés in brickyards to work 10 hours a day after 7 o'clock in the morning, or for a longer period and before 7 o'clock in the morning, if the employer is willing to pay extra compensation. Section 7 provides for a 10-hour day for the employés of steam surface and elevated railroads and for extra work and additional compensation in emergencies. Then come the exceptions relating to the employment of minors and adult females in factories and minors of both sexes in mercantile establishments. Another exception was that providing for a 10-hour day for employés of bakeries and confectionary establishments, a restriction which the Supreme Court of the United States has declared to be unconstitutional. Lochner v. N. Y., 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937.

The present Constitution of the state of New York was adopted in 1894, and became effective January 1, 1895. All of the rights which adult women citizens possessed at that time were confirmed by that

document.   One of those rights certainly was the right to contract for her labor and to work when and where she pleased, without reference to the position of the hands upon the dial of the clock.   It was not until four years after that the lawmaking power sought to place the limitation under consideration upon them.   What was the legislative intent in doing this?   The Attorney General finds and urges no other reason than that the general welfare of the state demands that the progeny of women of the factories shall have mothers with healthy bodies to the end that the state may have sturdy citizens.   Does the state look merely to the children of factory women for its future good citizens?   Why should the housewife, the woman who toils at home, in mercantile houses, in offices, or she who toils not at all—the society woman—be exempt from legislative interference, injunctive or mandatory, for the same reason?   Some of them may be mothers of future citizens, and it should be of as great interest to the state that their progeny should have proper birth and breeding, to conserve its welfare.   If this question of future citizenship is the only excuse for this assumption of police power, what becomes of the rights of the nonchild-bearing woman, a considerable class?   What of the woman beyond the age of childbearing, physically strong, having expert technical knowledge, with opportunity to employ it in a factory and at no other time than during the hours which the statute prohibits—a woman who is sui juris and who is desirous of exercising her right of contract and to work at her accustomed trade, but is prevented from doing so by this statute?   Surely, upon the theory of the Attorney General, the general welfare is not concerned in the matter of her employment.   With no other excuse this statute would appear to be most palpable special class legislation.

Upon this question of the right of the state to exercise its police power for the promotion of a strong and robust future citizenship, the Supreme Court of the United States had the following to say in the case of Lochner v. New York, supra:

"It is also urged, pursuing the same line of argument, that it is to the interest of the state that its population should be strong and robust, and therefore any legislation which may be said to tend to make people healthy must be valid as health laws, enacted under the police power.  If this be a valid argument and a justification for this kind of legislation, it follows that the protection of the federal Constitution from undue interference with liberty of person and freedom of contract is visionary, wherever the law is sought to be justified as a valid exercise of the police power.  Scarcely any law but might find shelter under such assumptions, and conduct properly so called, as well as a contract, would come under the restrictive sway of the Legislature.  Not only the hours of employés, but the hours of employers, could be regulated, and doctors, lawyers, scientists, all professional men, as well as athletes and artisans, could be forbidden to fatigue their brains and bodies by prolonged hours of exercise, lest the fighting strength of the .state be impaired.  We mention these extreme cases because the contention is extreme.  We do not believe in the soundness of the views which uphold this law.  On the contrary, we think that such a law as this, although passed in the assumed exercise of the police power, and as relating to the public health, or the health of the employés named, is not within that power, and is invalid.  The act is not within any fair meaning of the term a health law, but is an illegal interference with the rights of individuals, both employers and employés, to make contracts regarding labor upon such terms as they may think best, or which

they may agree upon with the other parties to such contracts. Statutes of the nature of the one under review, limiting the hours in which grown and intelligent men may labor to earn a living, are mere meddlesome interferences with the rights of the individual."

Women are here classed with minors under the age of 16 years. All minors are wards of the state, and this classification of women with children seems to be an attempt to relegate women to their old position as dependent state wards. That women have not yet been accorded equal liberty under the laws with men must be admitted. They never were, however, in the same class as to wardship with children, and the whole trend of modern legislation has been toward their emancipation from legal disabilities and a continued enlargement of their rights, particularly of property and of contract. This legislative emancipation has been supplemented by modern social development, which has resulted in the employment of women in all sorts of callings where their labor has come in competition with that of men. This to the extent of almost wholly supplanting men in some fields of labor. It must be apparent that women, considered in the matter of their employment, should not need the same paternal protection that is accorded by the state to its minor wards. The reason for the prohibition under consideration, therefore, is not to be found in the right of the state to control the action of its wards, although the classification of women with children in the statute suggests it.

The people contend that the law is a health regulation, and that its purpose is to protect the health of a large class of the community— i. e., women employed in factories—and being an enactment of that character, in the interest of health and the public welfare, it is wholly within the police power of the state, and in no sense derogatory of the constitutional rights of the citizen. Is it such a health regulation? There are 15 sections of article 6 of the labor law which follow the section 77. Fourteen of them are devoted to provisions for the health, safety, and welfare of persons employed in factories. They relate to the operation and protection of elevators and hoisting shafts, provisions for proper stairs and doors, special protection of employés operating machinery, provision of ample fire escapes, washrooms, and water-closets, the size and cleanliness and ventilation of rooms, the reporting of accidents, inspection of boilers, employment of persons at polishing and buffing and the requirement that sufficient time shall be accorded employés to secure their meals, together with a general power of inspection and regulation in the factory inspector. It is apparent on the face of these statutes that their purpose is to protect the health and safety of persons employed in factories and so to promote the public welfare. This purpose is not apparent on the face of the section under consideration.

The provision of the statute against the employment of women more than a certain number of hours a day or week might be considered a health regulation and within the powers of the state, although the Supreme Court of the state of Illinois (Ritchie v. People, supra) held such a law to be unconstitutional. But there is nothing in the prohibition of the section in question which indicates that its object is to pro-

mote the health or the public welfare.   Had the statute been so framed as to provide that none of the employment of women for 60 hours a week or 10 hours a day should be between 9 p. m. and 6 a. m., or had it provided that women might work only a limited time after 9 o'clock p. m. and before 6 o'clock a. m., if she was employed during other hours of the day, its object as a health regulation might be apparent. When, however, it is so drawn as to prevent an adult citizen from exercising her right to contract for employment, even for so limited a period as one hour during the prohibited time, it cannot properly be considered a health regulation, and is apparently an unreasonable and unwarranted infringement of the constitutional right of the individual, and not only of her right, but also of the right of him who would contract for her employment.

Reference only needs to be made to another article of the labor law relative to the employment of women (article 11, § 161, c. 32, p. 2637, Heydecker's Gen. Laws) to show the special and class character of this enactment, and to demonstrate that it was not enacted as a health regulation.   By the section cited:

"No female employé under twenty-one years of age shall be required to work in any mercantile establishment more than sixty hours in any one week nor more than ten hours on any one day, * * * nor shall any such employé be required or permitted to work before seven o'clock in the morning or after ten o'clock in the evening of any day.   This section does not apply to the employment of such persons on Saturday, provided the total number of hours of labor in a week of any such person does not exceed sixty hours, nor to the employment of such persons between the 15th of December and the following 1st day of January."

This means nothing if it does not permit the employment in mercantile establishments of minor females the entire 24 hours of Saturday from midnight Friday night and during every hour of the period between the 15th day of December and the following 1st day of January.   It will be noticed that such restrictions as there are in the law regarding employment in mercantile establishments only affect minors.   Adult women are not restricted in their rights of contract so far as labor in such establishments is concerned.   Yet the Legislature, apparently caring more for the comfort of Christmas shoppers than for the health of young girls, the prospective mothers ·of our future citizens, would permit them to be employed for 24 hours continuously in mercantile establishments for at least 69 days out of 365. With what refinement of logic did the Legislature arrive at the conclusion that it was unhealthful for any woman to work in a factory before 6 o'clock in the morning and after 9 o'clock at night, and only unhealthful and against the public welfare for minor females to work in a department store before 7 o'clock in the morning and after 10 o'clock at night?   Were they considering the health of women as a class, or did they merely have in view the hours when it would be convenient for the general public to do its shopping?   Is this plainly and palpably a health regulation in the interest of the common good?   Is it not plainly and palpably an unauthorized and unwarrantable interference with the constitutional rights of the citizen?

In its further discussion of the right of the Legislature of this state

to limit the hours of labor of bakers (and bakers may be men or women) the United States Supreme Court says:

"They are in no sense wards of the state. Viewed in the light of a purely labor law, with no reference whatever to the question of health, we think that a law like the one before us involves neither the safety, the morals nor the welfare of the public, and that the interest of the public is not in the slightest degree affected by such an act. * * * It is a question of which two powers or rights shall prevail—the power of the state to legislate or the right of the individual to liberty of person and freedom of contract. The mere assertion that the subject relates, though but in a remote degree to the public health, does not necessarily render the enactment valid." Lochner v. New York 198 U. S. 57, 25 Sup. Ct. 543 (49 L. Ed. 937).

The statute which would prevent Katie. Mead from working in a factory after 9 o'clock at night, under the best sanitary conditions, offers no prohibition against her doing the same work in a hall bedroom in a tenement house, under conditions more detrimental to her health. She may work at her usual employment all night if she so pleases, and the state does not interfere to prevent possible injury to her possible children who may be its future citizens. A dressmaker or milliner has a factory within the meaning of the law if he or she have but one employé. The employer, even though she be a woman, may work when and so long as it pleases her. The single employé, on the contrary, if she be a woman, may not work after 9 o'clock at night nor before 6 o'clock in the morning. Why this distinction between two possible mothers of future citizens if this be simply a health regulation? The relation of the subject of this statute to the public health and common welfare seems altogether too remote to sustain it as a proper exercise by the state of its police power.

We can arrive at no other conclusion than that there has been in this enactment an unwarranted invasion of the constitutional rights of individual liberty and property; that for this reason the information of the district attorney herein does not state facts constituting a crime.

The motion in arrest of judgment is granted and the defendant discharged. All concur.