PEOPLE v. WILLIAMS.

(Supreme Court, Appellate Division, First Department.    December 7, 1906.)

CONSTITUTIONAL LAW—LABOR LAWS—POLICE POWER.

> The clause of section 77 of the labor law (Laws 1903, p. 439, c. 184), forbidding the employment of minors under the age of 18 years and females in factories between 9 o'clock p. m. and 6 o'clock a. m., is not a valid exercise of police power, but an infringement of the constitutional right to contract.
>
> Houghton and Ingraham, JJ., dissenting.

Appeal from Court of Special Sessions of City of New York.

David L. Williams was convicted of permitting a female to be employed in a factory under his charge after 9 o'clock p. m.    From an order of the Court of Special Sessions (100 N. Y. Supp. 337) arresting judgment and discharging him, the people appeal.    Affirmed.

Argued before McLAUGHLIN, INGRAHAM, HOUGHTON, CLARKE and SCOTT, JJ.

Julius M. Mayer, for the People.
Frederick B. House, for respondent.

SCOTT, J.  The opinion delivered by the learned justice who wrote for the Court of Special Sessions discusses the constitutional infirmity of the clause of the statute upon which the prosecution is based so satisfactorily that we adopt it as the opinion of this court.  It would be necessary to add nothing to it, were it not for the fact that, in the discussion which has been had, a confusion seems to have arisen as to precisely what is the offense charged.  The statute (section 77, Labor Law, Laws 1903, p. 439, c. 184) contains two inhibitions.  It forbids the employment of any minor under the age of 18 years, or any female of any age in any factory before 6 o'clock in the morning or after 9 o'clock in the evening.  It is this clause which the defendant is charged with violating.  The other prohibition is quite distinct and forbids the employment of any such minor or woman for more than 10 hours a day, or for more than 60 hours in the week.  The two inhibitions are quite distinct and unrelated.  The first, which is the only one in question now, has nothing to do with the length of time a woman or minor shall work; for permitting such work for an hour, or even less time, within the prohibited hours, is a violation of the clause.  We may all be prepared to agree that for physical reasons a woman cannot, speaking generally, work as long or as hard as a man, and, if we had to consider a statute limiting the number of hours, per day or per week, during which a woman might work, the arguments now put forth to sustain the clause under consideration would be apposite and persuasive.  But that question is not before us, and its discussion serves rather to cloud than to clarify the question which is before us.

The provision under examination is aimed solely against work at night, without regard to the length of time during which work is performed, or the conditions under which it is carried on, and in order to sustain the reasonableness of the provision we must find that, owing to some physical or nervous difference, it is more harmful for a woman

to work at night than for a man to do so, for concededly the clause in question would be unconstitutional if it applied to men as well as to women. We are not aware of any such difference, and in all the discussions that have taken place none such have been pointed out.

The order appealed from is therefore affirmed.

McLAUGHLIN and CLARKE, JJ., concur.

HOUGHTON, J. (dissenting). I think the act limiting the hours and times of day in which women may work in factories (Laws 1897, p. 478, c. 415, § 77, as amended by Laws 1899, p. 350, c. 192, and by Laws 1903, p. 439, c. 184) is a valid exercise of police power for the preservation of the public health, and is not in conflict with either the state or the federal Constitution, and that defendant's motion in arrest of judgment should have been denied, and that the order granting it should be reversed. The purpose of the statute is to prohibit women working in factories more than 60 hours in any one week, and at presumably unhealthful hours, and to that end it prescribes that they shall not work before 6 o'clock in the morning and after 9 o'clock at night, and no more than 10 hours in any one day, except for the purpose of making a shorter day on the last day of the week. While the information and the proof in this case are meager, it is fair to assume that the woman who was found working in defendant's factory after 10 o'clock at night was doing so in pursuance of her regular employment by the defendant. The Legislature had the right to make the presence of a woman at work in a factory during the prohibited hours prima facie evidence of a violation of the law. In considering this case, therefore, we must assume that the woman found at work in defendant's factory was in his regular employ, and that he was permitting her to work in the course of that employment after 9 o'clock at night.

It is not every statute which interferes with the right of individuals to labor or contract for their labor that is unconstitutional. The test is whether the law is a fair, reasonable, and appropriate exercise of the police power of the state. In Armstrong v. Warden, etc., 183 N. Y. 223, 76 N. E. 11, it is said:

"It may be laid down as a general principle that legislation which has for its object the promotion of the public health, safety, morals, convenience, and general welfare, or the prevention of fraud or immorality, is valid."

The law prohibiting a person from carrying on or engaging in the business or the work of a barber on Sunday was held a valid exercise of police power and to work no deprivation of liberty or property within the meaning of the state and federal Constitutions. People v. Havnor, 149 N. Y. 195, 43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707. So, too, a law making it a misdemeanor for a person to employ another to work in underground mines, and in smelters and other works for the reduction or refining of ores or metals, more than eight hours per day, was held by the Supreme Court of the United States to be a valid exercise of police power of the state enacting the law, and not in violation of the fourteenth amendment of the Constitution of the United States,

for it did not bridge the privileges or immunities of a citizen or deprive him of his property. Holden v. Hardy, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780. In that case the plaintiff in error, Holden, was convicted of violating the statute. His defense was that the workman voluntarily entered into an agreement with him to work 10 hours per day in his mine, and that the making of such an agreement and permitting him so to work did not constitute a crime. This defense was held unavailing because the law was reasonable for the protection of the health of men employed in mines and in smelting and refining works. Massachusetts has long had a statute prohibiting the employment of women in any manufacturing establishment more than 60 hours per week, and it was held that it violated no constitutional provision, and clearly could be maintained as a health or police regulation. Commonwealth v. Hamilton Mfg. Co., 120 Mass. 383. In commenting upon the latter case, the court in Holden v. Hardy, supra, says:

"But, if it be within the power of a Legislature to adopt such means for the protection of the lives of its citizens, it is difficult to see why precautions may not also be adopted for the protection of their health and morals. It is as much for the interest of the state that the public health should be preserved as that life should be made secure. With this end in view, quarantine laws have been enacted in most, if not all, of the states, insane asylums, public hospitals, and institutions for the care and education of the blind established, and special measures taken for the exclusion of infected cattle, rags, and decayed fruit. In other states laws have been enacted limiting the hours during which women and children shall be employed in factories; and while their constitutionality, at least as applied to women, has been doubted in some of the states, they have been generally upheld. Thus, in the case of Commonwealth v. Hamilton Mfg. Co., 120 Mass. 383, it was held that a statute prohibiting the employment of all persons under the age of 18, and of all women laboring in any manufacturing establishment more than 60 hours per week, violates no contract of the commonwealth implied in the granting of a charter to a manufacturing company nor any right reserved under the Constitution to any individual citizen, and may be maintained as a health or police regulation."

In Lochner v. New York, 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937, the law prohibiting one from working in a bakery more than 60 hours in a week, or 10 hours a day, was declared unconstitutional because it was unreasonable and unjustifiable as a health regulation. It does not seem to me that the ruling in this latter case governs the question under consideration. It is well known, and courts can take judicial knowledge of the fact, that women who work excessive hours and for long periods in factories do not bear healthy children. Employment in a factory is usually attended with constant standing or constant sitting, either of which produces physical and nervous strain, and both of which, if excessively practised, are likely to induce generative weakness in women. In People v. Havnor, supra, Vann, J., says:

"It is to the interest of the state to have strong, robust, healthy citizens, capable of self-support or bearing arms, and of adding to the resources of the country. Laws to effect this purpose, by protecting the citizen from overwork and requiring a general day of rest to restore his strength and preserve his health, have an obvious connection with the public welfare. The physical welfare of the citizen is a subject of such primary importance to the state, and has such a direct relation to the general good as to make laws tending to promote that object proper under the police power, and hence valid under the

Constitution, which 'presupposes its existence, and is to be construed with reference to that fact.' "

Constant night work is unhealthful for men, and more so for women. It is a matter of legitimate concern to the state that its women shall be healthy; and it is a matter of much greater concern that its children shall be strong and grow to be self-supporting and active citizens rather than remain weakly, and ultimately become a burden upon the public. Besides, excessive labor of an automatic character, such as most factory work finally assumes, tends to dull the mental and moral perceptions and leads to degrading recreations, especially when work ceases at an unseemly hour of the night. It seems to me that the law is reasonable and one which the Legislature had the power to enact for the protection of the health of a very large class of citizens of the state. That the Legislature has power over a large number of matters respecting factories is unchallenged. The providing of fire escapes, proper ventilation, and sanitary arrangements are familiar illustrations. By the statute under consideration women are not prohibited from laboring as many hours per day or per week as they may desire, except in factories. The Legislature has deemed that if she be continuously employed in the same service in a factory more than a certain number of hours per day or week, or during the nighttime, her health would be likely to be injured. It is true that a woman has the right to make contracts respecting her labor, and it is also true that the statute in a sense infringes upon that right. Ordinances of every city and every village in the state infringe upon personal rights of citizens, and for that matter so does the Penal Code. Many vices are personal only to the one practising them, and yet they are so important to the public at large that they are properly made crimes. Similar statutes have been enacted by the Legislatures of various states of the Union and exist in many foreign countries. That other jurisdictions have enacted or upheld similar laws does not conclusively establish that the law in question is not in violation of private rights. Yet it is a circumstance to be taken into consideration in determining whether or not the law is a reasonable one and generally deemed for the public welfare. It cannot be said that the hours in which she may labor in any one day are unreasonable, for 15 hours are given in which she may work.

The fact that the statute contains no emergency clause I do not think vitiates it as matter of law. If an emergency existed, it was for the defendant to show it. Whether an emergency would be an excuse is not involved, for the presumption is that the woman was laboring during prohibited hours in the course of her general employment.

I think the order should be reversed and a judgment of conviction entered.

INGRAHAM, J. (dissenting). I concur with Mr. Justice HOUGHTON in his opinion. This whole question has received such a thorough discussion by the Court of Appeals and in the Supreme Court of the United States (People v. Lochner, 177 N. Y. 145, 69 N. E. 373, 101 Am. St. Rep. 773; Lochner v. New York, 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937) that a further discussion would seem to be un-

necessary, except to determine in each particular case whether the attempted exercise of the police power may be fairly said to relate to the safety, health, morals, and general welfare of the public, for it was held, both by the Court of Appeals and the Supreme Court of the United States, that "both property and liberty are held on such reasonable conditions as may be imposed by the governing power of the state in the exercise of those powers, and with such conditions the fourteenth amendment was not designed to interfere." 198 U. S. 53, 25 Sup. Ct. 541 (49 L. Ed. 937). In that case the Supreme Court of the United States came to the conclusion that there was no reasonable ground for interfering with the liberty of person or the right of free contract by determining the hours of labor in the occupation of a baker; that the trade of a baker, in and of itself, is not an unhealthy one to that degree would authorize the Legislature to interfere with the right to labor, and with the right of free contract on the part of the individual, either as employer or employé; but the opinion of the Court of Appeals of this state in sustaining this law, except so far as it was reversed upon this express ground, is still the law of this state.

It may be assumed that working in factories generally is not such an unhealthy occupation as would justify the Legislature in limiting the power of all persons to work in a factory; but we have here the question as to whether the physical condition of women, as distinguished from that of men, justifies the interference of the Legislature in preventing undue or protracted labor of women in factories. There is no question as to the power of the Legislature to interfere on behalf of minors so as to regulate the hours of children in factories as well as in other occupations; and I think, in this connection, there is a clear distinction betwen the sexes, based upon the recognized difference in the strength and capacity for manual labor between men and women, with the fact that because of this difference many employments which require great physical strength are not open to women, and there is, therefore, much greater competition among women for employment in the occupations which they are fitted to perform, and they are placed, therefore, at a much greater disadvantage in the struggle for existence. In the competition that has grown up under modern industrial conditions, the struggle on the part of the employer is to obtain from his employés the greatest amount of work possible, and where the supply of those able to do the work that women can do exceeds the demand there is danger that such excessive labor will be required of women who are given employment as will overtax their physical strength and break down the health of those employed. Regulation by the Legislature, therefore, as to the hours of labor by women when engaged in such work as would have a tendency to impair their health, is, I think, within the power of the Legislature, and comes fairly within the police power of the state as relating to "the safety, health, morals and general welfare of the public."