MARY KILMARTIN v. CHICAGO, B. & Q. RY. Co., Appellant.

**Personal injury:** RELEASE FROM LIABILITY. A release from liability for personal injury is conclusive unless it is shown to have been procured by fraud.

**Same:** FRAUDULENT STATEMENTS. Ordinarily a physician's statement that a personal injury will be cured within a certain time is so much a matter of opinion that a fraudulent purpose in making the statement cannot be predicated on the mere fact that recovery does not result as soon as anticipated. In the instant case the statements of a railway physician are held insufficient to constitute a fraudulent inducement to a settlement and release of the company from liability.

**Same.** The settlement of a railway claim agent with an injured party before he has had time to realize what he has suffered, or is liable to suffer, may be looked upon with suspicion; but in the instant case no evidence of fraud or imposition is shown.

**Same.** A woman of mature years and in full possession of all her mental faculties is competent to settle and release a claim for personal injury; and where neither want of capacity nor fraud is shown in the settlement the question of its validity is not for the jury.

*Appeal from Dubuque District Court.*— HON. M. C. MATTHEWS, Judge.

THURSDAY, JANUARY 16, 1908.

ACTION to recover damages for injuries received by plaintiff while being transported as a passenger by the defendant railroad. Verdict and judgment for plaintiff, and defendant appeals.— *Reversed.*

*Woodward & Lees, J. W. Kintzinger,* and *Longueville & Longueville,* for appellant.

*Henry Michel* and *William Graham,* for appellee.

McCLAIN, J.— Plaintiff, while riding as a passenger in a car of defendant, had her legs scalded below the knees, by steam from a bursting steam-heating pipe beside the seat occupied by her, and thus suffered the injuries for which she seeks to recover damages. No complaint is made as to the sufficiency of the evidence, nor the correctness of the instructions · under which the jury found negligence on the part of the defendant resulting in plaintiff's injuries; but defendant pleaded a settlement, which the plaintiff sought to impeach by allegation and proof that such settlement was procured by false and fraudulent representations misleading and deceiving plaintiff with reference to the extent of her injuries with the purpose and design of inducing her to receive a less amount by way of compensation than that to which she was reasonably entitled under the circumstances. The sole question for determination, although presented in various ways, is whether there was sufficient evidence to support a finding by the jury that the settlement was procured by false and fraudulent representations on the part of the employés of defendant.

The settlement was evidenced by a writing, signed by plaintiff after being read over to her, in which it is recited that in consideration of the payment of $50, the receipt of which is acknowledged, the defendant was released and forever discharged " of and from all debts, suits, causes of action, claims, and demands, whatsoever either at law or in equity, which I [plaintiff] now have, or to which I may hereafter become entitled, on account of the circumstances above set out [personal injuries sustained by reason of the bursting of the steam pipe above sufficiently recited], including damages not yet ascertained or developed, if any there shall be, as well as those now known."

The circumstances attending the execution of this instrument of release, as the evidence for plaintiff tended to show them to have been, were briefly as follows: The injury to plaintiff was received while she was a passenger on defendant's train between Beardstown and Monmouth, Ill., her destination being Dubuque, in this State. At Monmouth plaintiff left the train, and was met in the station by a physician, summoned by the defendant's agent, who had been advised by the conductor of the accident to plaintiff. By the direction of the agent, on plaintiff's request, she was taken to a hotel where the physician dressed her wounds and gave her some medicine. This was on the afternoon of the 6th of October. The same physician visited plaintiff the next day in the forenoon, again dressing the wounds, and was consulted as to whether she could proceed forthwith to her destination. He advised her that while it would be better for her to wait another day, still, in view of her desire to reach home and allay the anxiety of her relatives, she might proceed with safety. In response to questions asked by her, the physician said that it would take the wounds ten days to heal, and that she was suffering more from shock than from the burns, which he said were superficial. In the afternoon plaintiff was visited by the claim agent of defendant, who had been advised by telegram the preceding day as to the accident, and had come promptly to Monmouth by train. This agent was accompanied by the local agent of the defendant. After two interviews, in which the extent of plaintiff's injuries was discussed, and the opinion was expressed by the claim agent that the burns were superficial and would be healed in ten days the claim agent induced the plaintiff to settle for $50, and sign the written release on the receipt of that amount, which was paid, telling her at the same time he was only authorized to pay her $40, but that he would give her the remaining $10 out of his own pocket.

The false and fraudulent representations relied upon to defeat this settlement were the false statements of the physi-

cian and the claim agent that the burns were superficial and would heal in ten days; whereas, in fact, they were more serious than as represented, and did not heal for more than two months and left permanent scars, which continued to be more or less troublesome to plaintiff until the trial of the case, which was about eighteen months after the injury. The circumstances under which the settlement was made, plaintiff still being nervous and excited as a result of the injury, and without other advice than that of her niece who was about eighteen years of age, and the further fact that plaintiff, a farmer's wife without much experience in traveling by railroad, was incompetent to transact such business and incapable of appreciating her own rights, and, in general, the inadequacy of the compensation paid, are insisted upon also as reasons why the settlement should not be allowed to stand. No complaint is made of the instructions, so far as the jury was advised, that the settlement and release constituted a complete defense, unless obtained by fraud, deceit, and misrepresentation of the agent or the physician, and that the burden was on the plaintiff to show such fraud, deceit, and misrepresentation. As no conspiracy to defraud the plaintiff is alleged or shown, we may properly consider separately the different facts and circumstances relied upon in determining whether there were false and fraudulent representations, and whether the plaintiff was so far incapacitated from or incapable of understanding the nature and consequences of the settlement as that she should be relieved from the binding effect thereof.

There is no contention on the part of plaintiff that she did not understand the nature and effect of the instrument of settlement and release which she signed, and in consideration of which the full amount therein was paid to her. Such a written release is conclusive, unless impeached by proof that it was procured by false and fraudulent representations on which the party relied in making such settlement. *Wallace v. Chicago,*

1. PERSONAL INJURY: release from liability.

*St. P., M. & O. R. Co.,* 67 Iowa, 547; *Johnson v. Chicago, R. I & P. R. Co.,* 107 Iowa, 1; *Chicago City R. Co., v. Uhter,* 212 Ill. 174, (72 N. E. 195.) The burden of proof is on the party seeking to impeach the settlement. *Johnson v. Berdo,* 131 Iowa, 524; *Rowe v. Grand Trunk R. Co.,* 16 Upper Can. Com. Pl. 500.

The only fraudulent representation which plaintiff relies upon is that of the physician called to attend her and of the claim agent with whom the settlement was made that her injuries were superficial, and that she would fully recover therefrom in ten days; whereas, in fact, she suffered therefrom for more than two months, and still had trouble from the resulting scars at the time of the trial. It seems that in general representations as to how soon the injuries will be cured are so much a matter of opinion that a statement with reference thereto is not shown to be fraudulent by the mere fact that recovery does not result so soon as anticipated. *Homuth v. Metropolitan Street R. Co.,* 129 Mo. 629 (31 S. W. 903); *Doty v. Chicago, St. P. & K. C. R. Co.,* 49 Minn. 499 (52 N. W. 135). If the statement to induce the settlement is that the injuries are trivial and temporary, and such representation is fraudulent, the settlement may be disregarded. *Hirschfield v. London, B. & S. C. R. Co.,* 2 Q. B. D. 1. And we may concede for the purposes of this case, at least, that the physician called by the station agent to treat the plaintiff at Monmouth was defendant's representative in such sense that any false or fraudulent representations made by him to plaintiff as to the nature of her injuries were the false and fraudulent representations of the defendant. The difficulty is that the statements of the physician and of the defendant's claim agent are not shown to have been either false or fraudulent. There is not the slightest indication in the evidence that what the physician said to plaintiff was with a fraudulent purpose of enabling the claim agent to subsequently effect a settlement on the false assumption that the plaintiff's burns

*Margin note: 2. SAME: fraudulent statements.*

would be cured in ten days. It appears from plaintiff's own testimony that the conversation related to the question whether plaintiff could safely proceed at once on her journey, and that the physician, although advising another day's delay, assured her that as she was without fever or other indication of serious consequences she might in his judgment safely proceed at once, this assurance being coupled with a direction that she procure further medical treatment on reaching Dubuque. The fact that plaintiff did not recover within ten days, the time suggested by the physician, is explained quite as satisfactorily by the proof of plaintiff's subsequent conduct as on the theory that the statement was intentionally false. After the settlement she left Monmouth late at night, reached Dubuque the next morning at two o'clock, waited in the station until seven or eight o'clock, then went to the house of a friend, where she spent the day in bed, and on the evening of that day drove about twenty miles into the country in an open rig, spending the balance of the night with a neighbor, and arriving at her own home on the evening of the day following. She procured no medical advice or assistance at Dubuque, for the reason, as she says, that she thought if her injuries would be healed in ten days she did not need the services of a physician. After reaching home she treated her injuries with liniment until some time in November, when she called a physician, who found suppuration of the wounds, and treated her therefor until in December, when the wounds had healed, leaving a scar, which her physician testifies was little more than superficial, and showed no traces of any continuing diseased condition. There is no indication in plaintiff's evidence that her wounds would not have been completely healed within ten days had they been properly treated. The mere fact therefore that plaintiff's injuries were not in fact healed within ten days does not tend to show that the statement of the physician that he thought they would probably be healed within that time, coupled with the injunction to have them

again treated by a physician on reaching Dubuque, was false and fraudulent, nor that the settlement made by the claim agent on the assumption that they were temporary in character was procured by fraud.

It may be suspected that the statement of the claim agent that he was limited in his offer of settlement with the defendant to $40, and that he would pay the remaining $10 out of his own pocket, was a subterfuge to induce a settlement for a small sum; but there is no evidence of this fact, nor does plaintiff claim in her testimony that this statement had the slightest effect upon her by way of inducing her to enter into this settlement. She testifies to statements made to the claim agent at the time of the settlement indicating her belief that he and all other parties concerned were robbers, and " very small " in the matter of the allowance, but wholly fails to indicate that her consent to the settlement with the claim agent was induced by his offer to pay $10 out of his own pocket. The inadequacy of the consideration was not such as to raise any presumption of fraud. If the wounds were superficial, and would probably be healed in ten days without any loss of time or considerable expense for medical treatment, the compensation accepted might well have been regarded as reasonably adequate. There is no evidence whatever that plaintiff was not at the time of the settlement in such mental condition as to be capable of entering into a valid contract. She had been nervous and excited after the injury, but she had had a good night's rest, according to her own testimony and that of her niece, she had not been given any medicine during the forenoon of the day of the settlement, and could not therefore have been suffering from any stupefaction as the result of any medicine, and her account of her long conversation on the subject, with an interval for reflection after the claim agent called upon her, dispels any thought of undue imposition. Settlements made with an injured party by a claim agent of a railroad, who is rushed to the scene, and who deals

3. SAME.

with the injured person before he has had time to realize what he has suffered, or is likely to suffer, and without opportunity for consultation, may well be looked upon with suspicion; but in this case we think there is no evidence of fraud or imposition.

The suggestion by the counsel for appellee as to the incapacity of a farmer's wife, not familiar with railroad accidents, to settle a claim for injuries received by her in such accident, are scarcely entitled to serious consideration. Persons of mature years, in the full possession of their mental faculties, are supposed to be able to enter into a binding contract with reference to the compensation which they will accept for an injury suffered. In this state, at least, women, both married and single, are presumed to be able to contract as fully and effectually as other persons. In view of the legislation which places married women with reference to their property rights on the same basis with other persons, it will not do to assume that they are mentally incompetent. We may appropriately cite in this connection cases in which women have been held to possess the same constitutional rights as men with reference to making contracts and pursuing employments. *People v. Williams,* 51 Misc. Rep. 383 (100 N. Y. Supp. 337; s. c., on appeal, 116 App. Div. 379, 101 N. Y. Supp. 362); *Ritchie v. People,* 155 Ill. 98 (40 N. E. 454, 29 L. R. A. 79, 46 Am. St. Rep. 315); *Ex parte Leach,* 134 Ind. 665 (34 N. E. 641, 21 L. R. A. 701). On the evidence offered to show false and fraudulent representations and want of capacity to execute the instrument of release, it was error to submit to the jury the issue whether the release was binding on the plaintiff. *Penn R. Co. v. Shay,* 82 Pa. 198.

The judgment of the trial court is *reversed.*

4. SAME.