WILLIAM W. NASON, Appellee, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Negligence: PERSONAL INJURY: RELEASE FROM LIABILITY: EVIDENCE.
1 One who has been injured through the negligence of another

may, for a valid consideration, release his right of action for damages; and unless the settlement and release is shown to have been obtained by fraud or imposition it will be upheld. Evidence held insufficient to show fraud of defendant railway company in procuring a settlement and release from liability for injuries to a railway postal clerk.

Same. The mere fact that the opinion of the railway physician, as to the time within which one suffering from an injury will recover, is proven to have been incorrect, in the absence of any facts justifying the conclusion that his assurances were made to mislead and induce an advantageous settlement, is not ground for setting aside a settlement and a release of the company from liability.

*Appeal from Pottawattamie District Court.*—HON. N. W. MACY, Judge.

WEDNESDAY, DECEMBER 16, 1908.

ACTION to recover damages for injury to the plaintiff's person. Verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Carroll Wright, J. L. Parrish,* and *Saunders & Stuart,* for appellant.

*Reed & Robertson,* for appellee.

WEAVER, J.—The plaintiff, employed in the railway mail service, was injured in a collision on the defendant's road, and brought action to recover damages, alleging that his injury was occasioned by the defendant's negligence, and without fault on his part. The defendant denied the allegation of negligence and pleaded a settlement made with plaintiff after the accident, and a written release by him of any and all claims and rights of action against defendant on account of said injury. In reply the plaintiff

alleges that the settlement and release so pleaded were obtained from him while he was weak, sick and suffering from his injuries, and unfitted entirely to exercise judgment and deliberation, being induced thereto by the fraud and misrepresentations of the defendant's claim agent and surgeon, and without consideration. The court having refused to direct a verdict for the defendant; the jury found in the plaintiff's favor, assessing damages in the sum of $1,266. Defendant's motion for a new trial was overruled, and, judgment being entered on the verdict, it appeals.

The one question urged upon our attention by counsel is the effect to be given to the written agreement of settlement and discharge, the execution of which is not denied by plaintiff. That a person who has

1. Negligence: personal injury: release from liability: evidence.

suffered injury through the negligence of another may for a valid consideration effectually release and discharge his right of action for damages is of course too elementary to call for argument or citation of authorities. This counsel for appellee concedes, but contends that the evidence disclosed facts from which the jury could properly find, and evidently did find, that the release here pleaded was obtained by the fraud, imposition and misrepresentation of the appellant and its agents, and therefore he is not estopped or precluded to assert and enforce his claim for a recovery.

The accident in which the appellee was injured occurred on June 14, 1906. While sustaining bruises upon his head and body his limbs were not broken, and the most serious complaint made by him is that the injuries so received, externally and internally, culminated in a nervous disease or weakness known as "neurasthenia." After getting out of the wreck he attempted to walk, but fell in a fainting or unconscious condition, and was placed in a sleeper and returned to his home in Council Bluffs, where he was met by the company's surgeons. He was

still unable to walk without aid, and the surgeons, or one of them, continued for some time to attend him in his home, but informed him that his injuries were not of a very serious character. He continued in bed for a period of about ten days, after which he was up a part of the time, but had to lie down frequently. He complained of dizziness and suffered considerable pain. According to his statement, he did no business for a period of five or six weeks. During the earlier part of this period the company's surgeon visited appellee daily, but thereafter at less frequent intervals, and the evidence tends to show that such visits had ceased prior to July 25, 1906. At all times the surgeon expressed the confident opinion that the man was not seriously or permanently injured, but would soon be able to return to his work. On July 25, 1906, six weeks after the accident, the company's claim agent, Mr. Palmer, called upon him with reference to a settlement. Up to this time appellee had made no claim against the company for damages. He was sitting at the table when the agent arrived, but with the assistance of his wife went into another room where the interview took place. The agent said he had lately interviewed the surgeon, who informed him appellee would be able to return to his work in two months, and proposed to settle by paying to appellee an amount equal to two months' salary which he had been earning prior to his injury, being an aggregate sum of $234. Appellee's wife objected to the settlement offered, but he agreed to it, received a check for the money, and signed the release, which in express terms covers and includes all his claims and rights of action against the appellant on account of his said injuries. He does not claim to have been misled or deceived by the surgeon or claim agent in any way except by their assurances as to the nature and extent of his injuries. His testimony tends to show that he did not recover as soon as he had been led to hope, but for a considerable period

was compelled to undergo treatment involving suffering and expense, and is not yet fully restored to health, though returned to his employment in the postal service.

Conceding to its full extent the contention of appellee's counsel that an agreement of settlement or release, obtained from an injured person in the absence of independent counsel or advice, should be and will be scrutinized by the court with great care, and upon proof of any fact or facts fairly tending to show fraud or unconscionable advantage in obtaining it, a finding by the jury which holds such settlement of no effect will not be disturbed, yet after a careful consideration of this record in its entirety we are constrained to hold that it shows no fact or state of facts on which either court or jury can rightfully base a finding that the settlement here involved was tainted with fraud or imposition. Appellee was a man forty-one years of age, and the position which he has for a long time held in the railway mail service justifies us in assuming that he is a person rather above the average man of intelligence and experience, a presumption which is sustained by his testimony as a witness. While he says that at the time of the settlement he was sick, weak and excitable, and "shot all to pieces" and was worried and harassed over his financial condition and accumulating obligations, he makes no claim that he was in any manner misled or deceived as to the nature of the agreement he was making or the amount of money he was to receive, or as to the purpose and effect of his agreement to absolve the defendant from further liability to him. There is no showing that the agent Palmer dissuaded or in any manner prevented the appellee from consulting friends or counsel. Indeed, as six weeks had passed since the injury, and the appellee was at least apparently recovering, the agent may not unreasonably have assumed that the injured man had been fully advised concerning his rights in the premises. There was no false assertion of a defense to

his right of action, or threat of protracted litigation. The single question to be settled between them was the amount which appellee was willing to accept in discharge of his claim. Appellee knew that the agent had no personal knowledge of his condition or the extent of his injuries, and he must also have known that he was being solicited for a settlement as favorable to the company as the agent could reasonably induce him to make. In reporting to the appellee what the doctor had said concerning his condition and the likelihood of his early return to work, there is nothing to show that the agent did not truthfully and literally repeat the information which had been given him. Indeed, we find not the slightest suggestion of any fraud or deception chargeable to the agent. He came to the appellee as a stranger, disclosing to him truthfully the nature of his errand. There was little discussion of the matter between the parties, and no undue persuasion or pressure exerted by the agent.

The appellee seems to charge the blame for his acceptance of the settlement, not so much to the agent, Palmer, as to the surgeon, Dr. Jennings, and says he signed the release only because he relied upon the representations or predictions Jennings had made concerning his early recovery from his injuries. It is to be borne in mind that Dr. Jennings was not present at the settlement, and took no part in it, and, so far as the record shows, had no knowledge or notice that a settlement was to be attempted. It may be conceded that he encouraged the appellee with assurances that his injuries were not permanent or serious, and that his recovery was a matter of short time only, but there is an entire failure of proof that in this representation he was not acting in perfect good faith. The visible surface injuries which appellee sustained, while doubtless of a painful character, were not such as to excite serious apprehension, either in the physician or himself, and from

2. SAME.

these he appeared then to be recovering.  Nerve diseases such as afflict the appellee are ordinarily of obscure origin and character and slow development, and with the cure of his wounds and disappearance of outward indications of injury it may be that both he and the surgeon were deceived as to his true condition.  Indeed, he himself says that at the date of the settlement he was feeling better, was getting out of doors, taking short walks, and exercising his limbs, and that thereafter he continued slowly to improve, and it was not until the middle of September when he learned his true condition.  He says of himself: "I realized then I was up against it.  Up to that time I supposed I was getting along and could be at work." When reduced to brief statement, the most that can be said of Dr. Jennings' connection with appellee's cause of action is that his assurances of an early recovery have proven incorrect; but, in the absence of some fact or circumstances justifying the conclusion that they were fraudulently made to deceive or mislead the injured man as to his real condition, and thus aid the appellant in obtaining an advantageous settlement with him, the fact that he relied thereon in executing the release affords no ground in law for avoiding its effect.  We must not be understood as holding that expressions of professional opinion by a surgeon in the employment of a party charged with responsibility for a personal injury, when made to the injured person for the purpose of inducing a settlement of his claim for damages may not constitute fraud and false representations, but we do hold that to justify the conclusion of fraud something more must be shown than that the opinion or representation has been proved incorrect, and this, we think, is the utmost of the showing made by the appellee.  *Kilmartin v. R. R. Co.*, 137 Iowa, 64.

It follows from this conclusion that the trial court should have sustained the appellant's motion for a di-

rected verdict; and, such being our view, other questions suggested need not be considered.

For the reasons stated, the judgment appealed from must be `reversed`.