BERNARD R. SEYMOUR, Appellant, v. CHICAGO & NORTHWEST-
ERN RAILWAY COMPANY, Appellee.

RELEASE: Validity—Fraud—Expression of Opinion. Fraud suf-
ficient to avoid a release may not be built up solely on the
good-faith expression of a mere naked opinion.

Applied where the one giving the release had full knowledge
of his own injury and his ability to do work, where the one
charged with fraud did not have such knowledge, but stated to
the injured party "that he was making a big fuss over his in-
jury, that said injury was of a *trifling* nature, and that he ought
to have been at work for the past six weeks."

Applied also where the statement was made "that plaintiff's
shoulder (which was injured) would be all right."

Applied also where a physician honestly believed and stated
that certain injuries were not permanent, etc.

RELEASE: Validity—Fraud—Promise of Employment—Breach
—Effect. Fraud sufficient to avoid a release may not be predi-
cated on the breach by the one receiving the release of a prom-
ise "to take care of or employ" the releasor.

RELEASE: Validity—Fraudulent Concealment—Evidence—Suffi-
ciency. The plea that the physician representing the one to
whom a release was executed *fraudulently* concealed from the
injured party that said injured party had an incurable disloca-
tion, or one which rendered subsequent dislocations highly prob-
able, is not established by evidence *of the condition of the in-
jured party after a second dislocation.*

FRAUD: Pleading—Avoidance of Release. One seeking to avoid
a release of a claim for personal injuries on the ground of
fraudulent concealment by those representing the one receiving
the release, must, as a condition to the introduction of evidence
bearing thereon, specifically plead the ultimate facts constitut-
ing such fraud.

RELEASE: Validity—Fraudulent Concealment—War of Opinions. The plea of fraudulent concealment in the condition of an injured party, sufficient to avoid a release, wholly fails when the evidence shows nothing more than the expression of an honest opinion by the physician charged with the fraud, and the expression of a contrary and equally honest opinion by other physicians.

EVIDENCE: Presumptions—Unsupported Deductions. Quite manifestly, one may not make a prima-facie case by drawing conclusions from facts not shown.

APPEAL AND ERROR: Harmless Error—Non-Fraudulent Representations—Reliance—Refusal to Permit Showing. While reliance on alleged fraudulent representations is an important element, yet harmless error results from refusing to permit a party to testify that he did so rely, *when the representations are held non-fraudulent*.

APPEAL AND ERROR: Issues and Questions in Lower Court—Trial Theory—Counter Theory on Appeal. A trial in the lower court on the theory of *deliberate fraud* will not be reviewed on appeal on the theory of an *honest mutual mistake*.

PLEADING: Defenses—Inconsistency. Defenses which are not merely inconsistent with but *destructive* of each other are not allowable.

RELEASE: Validity—Mistake—Fact and Opinion Contrasted. Mutual mistake sufficient to avoid a release must be a mistake of a past or present material *fact*, and not error in opinion respecting future conditions.

CONTRACTS: Rescission—Mutual Mistake—Failure to Tender Consideration Received—Effect. Rescission of a contract on the grounds of mutual *mistake* demands, as a condition precedent, a return or a tender of return of the consideration received. (*Reddington v. Blue*, 168 Iowa 34, distinguished.)

*Appeal from Clinton District Court.*—A. J. House, Judge.

Wednesday, October 3, 1917.

Plaintiff was injured while in the employ of the defendant and seeks to recover damages therefor; his claims are put in issue generally, and there is a special defense

that there has been a settlement and release. Verdict was directed against the plaintiff, and he appeals.—*Affirmed.*

*A. W. Walliker,* for appellant.

*Ellis & McCoy, James C. Davis* and *Henry L. Adams,* for appellee.

Salinger, J.—I. If verdict was rightly directed against plaintiff because of settlement and release, there is no occasion to go into whether he had a case for a jury on the claim made by his petition. So we give precedence to whether plaintiff made a jury question on the plea of avoidance interposed by him against his release.

1. RELEASE: validity: fraud: expression of opinion.

It is affirmatively defended and admitted that, on the 30th day of September, 1913, a written settlement was entered into and signed by the plaintiff which acknowledges the receipt of $500 in full satisfaction, contains a statement that the signer has read and understands this release, and that no contract or promise of employment is made with him. It is replied that the settlement is, *inter alia,* not binding because of certain things done by Piersol, assistant claim agent of defendant. The claim is, in effect, that Piersol told plaintiff, with fraudulent intent to deceive and to induce the settlement made, that plaintiff was making a big fuss over his injury, that same was trifling, and that plaintiff should have been at work in the freight service for the past six weeks. As against the motion to direct verdict, we must hold that Piersol did say this. Plaintiff contends that, on the authority of *Haigh v. White Way Laundry Co.,* 164 Iowa 143, 145, such statement made a jury question of whether the settlement was induced by fraudulent representations. We do not so read the *Haigh* case. It does not deal with the naked statement that the injuries were trifling, but with such statement plus one that "the tendons of the hand were not injured." It excludes the idea that a fraudulent representation can be

made out of a statement of an opinion without a statement
of a fact, and without an intent to deceive.   The case came
here upon a ruling on demurrer, and so was admitted that
the representation complained of was made with the intent
to deceive and mislead.   It does not hold that saying that
an injury was trifling will send fraudulent representation
to the jury, but that such a statement and the false asser-
tion of a fact, both uttered with intent to defraud, will do
so.   And see *Houston & T. C. R. Co. v. Brown*, (Tex.) 69
S. W. 651; *Douda v. Chicago, R. I. & P. R. Co.*, 141 Iowa
82, at 87.   The greatest length to which the authorities
have gone is found in *Hirschfeld v. London, B. & S. C. Ry.*,
2 Q. B. D. 1, in which it is said that, if the statement to in-
duce the settlement is that the injuries are trivial and tem-
porary, and such representation *is fraudulent*, the settle-
ment may be disregarded.

But that the question is not foreclosed does not relieve
us from dealing with it.   May we say that the statements
on part of Piersol were a basis upon which a jury might
rightfully avoid the settlement?   Piersol is not shown to be
a physician, and the record fairly discloses that he was not
one.   He made no physical examination of plaintiff.   The
plaintiff was injured on June 1st.   From then to Septem-
ber 30th, when Piersol spoke, plaintiff had personal knowl-
edge of his own condition.   It does not appear that Piersol
ever had such knowledge.   Plaintiff was advised by others
than Piersol that plaintiff was able to do light work.   He
desired to do such work, and, on August 19th, so advised
the officer to whom Piersol acted as assistant.   As early as
August 5th, Piersol advised he would look into plaintiff's
case.   Some  weeks before Piersol spoke, he sent plaintiff a
check for $160, and asked that a release sent be executed in
consideration.   In writing Piersol's principal on August 19,
plaintiff asks work, and advises that a doctor had promised
that, if plaintiff got work he could do, the doctor would

give him a release, i. e., permission to do such work, and that plaintiff has left said check and release at a stated place pending reply to this his letter. On August 25th, Piersol answered that the $160 was sent because of the ap- ·plication for assistance that plaintiff had made. He adds that it does not appear that the company was in any way in fault or liable. On September 8th, plaintiff wrote Piersol, reiterating that he would try passenger work until his shoulder got so he could go back on freight. He added:

"As I have been out of work for a long time, and will have some expense now in going to work, would like that you advance me payment for the time I have lost, pending our final settlement."

This letter was answered by one of Piersol, dated Sep- tember 10, 1913, and which says, concerning request to pay for lost time:

"Until such a time as a settlement is made, I have to say that I thought I was very explicit when you were in my office, and you fully understood that we cannot do any- thing of this kind at all; that if we pay you any money in this case we must have a complete release. In the first place, it does not appear to me that this company was at fault or liable for the accident with which you met, as I also explained to you when you were here. Whenever you are ready to make an adjustment of this matter, we are willing to make you some allowance, but it will be nec- essary to sign a full and complete release."

It comes to this: Piersol is not a doctor; he has no personal knowledge of the physical condition of plaintiff; is advised by plaintiff he thinks he can do work; he tells plaintiff that there is no liability for his injury; plaintiff thereafter approaches him of his own volition, and after he has been told that nothing will be paid unless a full re- lease is given: if in these circumstances Piersol said that

plaintiff was making a big fuss over his injury, that same was of a trifling nature and plaintiff should have been at work in the freight service "for the past six weeks," was there a case of fraudulent representation for a jury? We think that saying this, without more, is the expression of a naked opinion, and one upon which plaintiff had, in the circumstances, no right to rely. Such has been the holding where statements of like effect were made by physicians who had made examination. *Nason v. Chicago, R. I. & P. R. Co.*, 140 Iowa 533; *Kilmartin v. Chicago, B. & Q. R. Co.*, 137 Iowa 64; *Douda v. Chicago, R. I. & P. R. Co.*, 141 Iowa 82, 88; *Haigh v. White Way Laundry Co.*, 164 Iowa 143, 146, 147; *Chicago & N. W. R. Co. v. Wilcox*, (C. C. A.) 116 Fed. 913; *Tatman v. Philadelphia, B. & W. R. Co.*, (Del.) 85 Atl. 716; *Owens v. Norwood White Coal Co.*, 157 Iowa 389, 400; *Homuth v. Metropolitan St. R. Co.*, (Mo.) 31 S. W. 903; *Doty v. Chicago, St. P. & K. C. R. Co.*, (Minn.) 52 N. W. 135. And see *Longshore v. Jack & Co.*, 30 Iowa 298. In an action for damages by false representations, the plaintiff has the burden of proving that the representations claimed were made; were false; known at the time to be false; were made with intent to mislead plaintiff; that there was reliance and damage, and no negligence in relying. *Gee v. Moss*, 68 Iowa 318; *Nason v. Chicago, R. I. & P. R. Co.*, 140 Iowa 533, 536; *Kilmartin v. Chicago, B. & Q. R. Co.*, 137 Iowa 64, at 67; *Johnson v. Chicago, R. I. & P. R. Co.*, 107 Iowa 1, at 7. It is fraud that avoids the settlement, and "not error of law or lesion." *Adle v. Prudhomme*, 16 La. Ann. 343. It is not enough that the fact is different from the representation made by the opinion. While an opinion may base the charge of fraud (*Haigh's* case, 164 Iowa 146, 147), that is not because the truth differs from the opinion, but because "the opinion and belief were fraudulently misrepresented." *Stebbins v. Eddy*, 4 Mason (U. S.) 414, 417. Appellant cites *Meyer v. Houck*,

85 Iowa 319. It is not a fortunate selection. Its effect is that a motion to direct a verdict should be sustained when, considering all of the evidence, it clearly appears to the court that, if a verdict were found in favor of the party upon whom the burden of proof rests, it would be the duty of the court to set it aside—that a mere scintilla will not send any case to the jury. The case of *Chicago & N. W. R. Co. v. Wilcox*, (C. C. A.) 116 Fed. 913, adds that the settlement may not be avoided by a mere preponderance. We do not care to go so far as that, but note the case as bearing on whether plaintiff had evidence of the fraud he charges. In *Nason v. Chicago, R. I. & P. R. Co.*, 140 Iowa 533, 536, the condition of plaintiff was much more indica-tive of serious injury than can be claimed here. So of *Nelson v. Chicago & N. W. R. Co.*, (Minn.) 126 N. W. 902, and *Tatman v. Philadelphia, B. & W. R. Co.*, (Del.) 85 Atl. 716, at 719. The dealing was at arm's length. As said in *Haigh v. White Way Laundry Co.*, 164 Iowa 147, that plaintiff's hand was injured and that this was manifest and known to her must be conceded, and this independent fact was as well known to her as to the company. There was much more opportunity to consult others than was present in *Owens v. Norwood White Coal Co.*, 157 Iowa 389, at 393, or in *Nason v. Chicago, R. I. & P. R. Co.*, 140 Iowa 533, 536, or *Kilmartin v. Chicago, B. & Q. R. Co.*, 137 Iowa 64, 70. There was as much opportunity as in *Douda v. Chicago, R. I. & P. R. Co.*, 141 Iowa 82, 88. What Piersol said is not stronger than a representation by the lawyer of defendant that there was no liability, and that the injured party had no case at all. And that has not sufficed. *Owens v. Norwood White Coal Co.*, 157 Iowa 389, 394; *Johnson v. Chicago, R. I. & P. R. Co.*, 107 Iowa 1. And see *Nason v. Chicago, R. I. & P. R. Co.*, 140 Iowa 533, 537. *Bussian v. Milwaukee, L. S. & W. R. Co.*, (Wis.) 14 N. W. 452, 453, does not, when rightly viewed in all its aspects, run counter to these

of our own decisions. The settlement was as fair a one and made with much more deliberation, freedom and intelligence than we find in *Nason v. Chicago, R. I. & P. R. Co.,* 140 Iowa 533, 537, *Owens v. Norwood White Coal Co.,* 157 Iowa 389, 395, and *Kilmartin v. Chicago, B. & Q. R. Co.,* 137 Iowa 64, 71. The facts distinguish *Winter v. Great Northern R. Co.,* (Minn.) 136 N. W. 1089. We conclude that the statements made by Piersol do not make the directed verdict against plaintiff an error.

II. It is further replied that Richards, the general claim agent of defendant, fraudulently stated and represented to plaintiff that plaintiff's shoulder would be all right, and that, in case anything happened to plaintiff on his resuming his former employment, defendant would take care of him; that defendant has not taken care of him nor given him any employment whatsoever since he was compelled to abandon his services as a freight brakeman; that these "fraudulent representations," too, were made with intent to deceive and mislead plaintiff as to the extent of his injuries, and were relied upon. If we assume that Richards said this as to the shoulder, we have settled the effect of such statement in disposing of what Piersol said.

2. RELEASE: validity: fraud: promise of employment: breach: effect. If there were evidence of the alleged promise, such evidence will not avail the plaintiff. He is not suing upon the alleged contract, but is urging its breach as a fraud that should vitiate his settlement. A breach of such promise is not such fraud. Moreover, the settlement declares in writing that "no promise of employment is made." That is binding if the settlement may not be set aside. True, plaintiff makes the distinction that, while a promise to employ is covered by the contract of settlement, he is not thereby estopped from enforcing an agreement *to be taken care of.* We have to say: (1) It is clear from all

the circumstances that, if there was a promise to take care of plaintiff, it was mutually understood that he should be cared for by employment. ' The point is developed by rulings excluding testimony, and that offered was what bore on whether plaintiff was offered a position as extra freight brakeman.  (2) To go no further, the proffered testimony was not admissible under the issues which on this head were addressed solely to whether the settlement was avoidable for fraud. The authorities relied upon against our conclusion are *Larson v. Smith*, 174 Iowa 619, which holds that parol evidence is inadmissible to show that an option was inserted in a lease after the terms were agreed to, and was therefore without consideration; *Douda v. Chicago, R. I. & P. R. Co.*, 141 Iowa 82, 87, that it is error to submit a promise to the jury when there is no evidence of a promise; Bouvier, that a past, present or future promise is a good consideration for a contract. Finally, there is *Swanson v. Union Pac. R. Co.*, (Neb.) 152 N. W. 744.  It is a suit to recover promised salary. To get at its scope and meaning, it is necessary to examine *Tylee v. Illinois Cent. R. Co.*, in the same court, 150 N. W. 1015. Its holding is that, in a suit to recover salary, an oral promise by the employer to pay the employee his regular salary during a temporary disability may be shown by parol to be part of the consideration for a release of the employer's liability for personal injuries, though the employee signed a release for the expressed consideration of a specific sum of money. The *Swanson* case adopts this, and merely adds that the testimony of plaintiff was sufficient, if believed by the jury, to establish the making of the settlement as alleged by him. We find nothing in what Richards said or did to make the direction of the verdict erroneous.

III.  Plaintiff left Piersol and went to Hopkins, who was then the chief surgeon of defendant. Doctor Hopkins examined plaintiff, and, we must hold, then told plain-

tiff that plaintiff's injury was not permanent, and that
plaintiff would be able to resume his run as a freight
brakeman in from four to six weeks, or words to that effect.
As to this, too, it is claimed that it was a fraudulent mis-
representation, made to deceive plaintiff into the settlement.
Doctor Hopkins testifies that he honestly believed what he
told plaintiff. It is only by considering testimony as to
plaintiff's condition later than when Doctor Hopkins saw
him that there is room to claim that the doctor was mis-
taken, or that his opinion was an unreasonable one. We
have sufficiently indicated that, speaking generally, said
statement by Hopkins made no jury question of fraudulent
representation. Note further that there is no evidence that
the doctor was present at the settlement, or spoke with ref-
erence to or in aid of a settlement. See *Nason v. Chicago,
R. I. & P. R. Co.*, 140 Iowa 533, 538; *Kilmartin v. Chicago,
B. & Q. R. Co.*, 137 Iowa 64, 68.

3-a

Another angle of the attack is, in effect,
that Doctor Hopkins knew that plaintiff
had an incurable dislocation, or, if not that,
knew that the injury present made a second
dislocation highly probable, of which fact
plaintiff was ignorant, and that the opinion given by the
doctor, therefore, amounts to a fraudulent concealment.
We may concede that *Gee v. Moss*, 68 Iowa 318, *Lumley v.
Wabash R. Co.*, 76 Fed. 66, 70, *Stewart v. Wyoming C. R.
Co.*, 9 Sup. Ct. Rep. 101, and *Linton v. Sheldon*, (Neb.) 154
N. W. 724, hold that concealment may operate as a fraud.
The question remains whether a concealment which is or
may be a fraud exists. The claim that the jury should
have had the question rests on the argument that a second
dislocation was most likely to occur, that a skilled surgeon
like Doctor Hopkins must have known this, and therefore
his silence on the point might be a fraudulent concealment.

3. RELEASE:
validity:
fraudulent
concealment:
evidence: suffi-
ciency.

Whether there was such concealment must, in any view, depend on whether what Doctor Hopkins saw suggested the probability of a second dislocation. It may be conceded that, if the doctor saw what was found after a second dislocation had occurred, he should have known that the recurrence of plaintiff's injury was probable. But on this head, the plaintiff is driven into a most peculiar position, and he attempts to show what Doctor Hopkins should have known, by claiming both that there was and was not a second dislocation, and by showing what his condition was *after* a second dislocation,—evidence which is addressed to conditions that arose after Hopkins had spoken. Plaintiff contends that there was no second dislocation so that he may be able to use the testimony of his witnesses who speak to his condition at a time which was subsequent to the second dislocation, if there was one. He must have it held that all which these witnesses found was perceivable when the claim agents and the surgeon of defendant dealt with him. Only by eliminating a subsequent injury can he claim that the consequences of the first dislocation were so manifest and serious as that a fraud was practiced upon him when he was told that his injuries were trifling, or that he was not permanently injured.

On the other hand, he wants a second dislocation. He needs it to make good his claim that a second was so likely to occur after a first as that, when the surgeon of defendant told him his injury was not permanent, he knew the statement was false, because he must have known that a second dislocation was very likely to occur. He cannot hope to accomplish anything by theories which rest upon both the assertion and the denial of the same basic fact. We must ascertain what is the fact and then proceed upon the ascertainment. We find that there was a second dislocation. Plaintiff, over and again, speaks of his sec-

ond injury,—of his second dislocation. He pleads, and he
testifies in terms, that his shoulder was dislocated a second
time when he had the accident at Beverly. He compares
the pain from the time of the first dislocation with that at-
tendant upon the second one. He complains of the exclu-
sion of testimony seeking to elicit whether Dr. Fairchild
ever told him that his shoulder was liable to become dis-
located again. He accuses Hopkins and others of conceal-
ing that fact, and bases claims upon that concealment. He
must follow where the existence of the second dislocation
leads, upon his own theory. Since he was examined after
he had sustained the second injury, what was found upon
such examination is no evidence that pronouncements made
by those who examined him before he was injured a second
time were fraudulent. His condition after the second dis-
location is no evidence of what his condition was before he
sustained the second dislocation. See *Kilmartin v. Chi-
cago, B. & Q. R. Co.,* 137 Iowa 64, 68.

### 3-b

It is assigned for error that the court
4. Fraud: plead-
ing: avoid-
ance of re-
lease.    would not let plaintiff say whether Dr.
Fairchild ever told plaintiff about the true
condition of plaintiff's shoulder, and wheth-
er Fairchild ever stated to plaintiff that his shoulder was
liable to become dislocated again. The objection sustained
was that it was immaterial, irrelevant and incompetent,
and does not tend to establish any issue in the case. We
think the objections are well taken: First, because this
is an attempt to prove fraudulent concealment, which claim
has been sufficiently dealt with already; second, because no
allegation in pleading covers any act or omission on part
of Fairchild. See *Johnson v. Chicago, R. I. & P. R. Co.,*
107 Iowa 1, at 5.

### 3-c

What evidence is there that there was

5. RELEASE: validity: fraudulent concealment: war of opinions. any fraud if Dr. Hopkins does differ from some of the medical witnesses for plaintiff on whether a second dislocation was probable? There is some difference of opinion between those very witnesses. True, plaintiff is not bound by any of his witnesses in the sense that he may not show by one witness what differs from what is said by another. But that is not the point. It does not change that, if his own experts differ, it bears on whether Dr. Hopkins was guilty of fraud in also differing. The appellant states his position tersely: He says that, if there is liability to recurrence, no doctor could truly say that the injury is not permanent; that this is so if the experts used by plaintiff agree that there is such liability. Reduced to its lowest terms, this asserts that, if a doctor expresses an honest opinion and other doctors do not share such opinion, its utterance is a fraud. In *Owens v. Norwood White Coal Co.,* 157 Iowa 389, 404, we refused so to hold, though the injury apparent was much more developed and perceivable than the one which Dr. Hopkins spoke to.

### 3-d

The reply alleges that there was a cus-

6. EVIDENCE: presumptions: unsupported deductions. tom that injured employees were not permitted to resume work except upon a "release," i. e., a permission from a doctor, and that both he and Hopkins understood that the granting of such release implied that the employee had fully recovered, and that, therefore, the statements made by Hopkins were intended and were understood to mean that plaintiff *had* fully recovered. Passing that the naked fact that such was the intention and understanding proves no fraud, the

claim involves a *non sequitur*. It arises upon exclusion of testimony. It is presented that the court erred in sustaining objections to the following questions: .

"I will ask what you understood from what Mr. Hopkins told you, at the time you were examined by him in Chicago, about your going back to work in four or six weeks? Do you know what the custom of the defendant company was with reference to obtaining defendant's doctor's release before being permitted to resume the former employment in case of injury?"

As said, appellant is urging a *non sequitur*. Suppose he *had* been allowed to say that there was such a custom, and that he understood the doctor to represent full recovery because both knew of the custom, how can anything material be produced by such testimony so long as there is no evidence that, when the doctor spoke, there had been such "release,"—or, if there was, that Dr. Hopkins knew it. The argument for appellant consists of the perfectly inconclusive explanation that these questions were asked for the purpose of showing what the custom of the defendant was in that respect, and what plaintiff understood from what Hopkins told him, and that plaintiff should have been allowed to show the defendant's method of doing business in that respect, and what plaintiff's understanding was.

IV. It is a serious question whether the whole controversy may not be disposed of by holding that such representations as were made stated the truth. Fifteen days before the settlement was made, plaintiff went to work as a passenger brakeman. He quit that service on October 16th and returned to his work as a freight brakeman. This was some 16 days after Dr. Hopkins had given his opinion that the injuries were not permanent. He remained in this service until December 15th. So far as appears, he would be at work still if he had not suffered a second dislocation. The only answer he can make is that his work

consisted of nothing but flagging, sitting in the way car and going back and forth from the hind end. It does not appear, even on what was found after the second injury, that the outward signs disproved the prognosis of Dr. Hopkins made before there was a second injury. We do not care to rest this opinion on a finding that as matter of law the truth was told, but point out the record on that head as some support of the trial court in holding that there were no fraudulent representations.

V. It is assigned that plaintiff should have been permitted to say, in terms, that he relied upon what Richards and Piersol said. That testimony in that form is admissible to establish reliance is elementary. We have to say that the exclusion was error

7. APPEAL AND ERROR: harmless error: non-fraudulent representations: reliance: refusal to permit showing.

without prejudice. If the representations made were either true or not fraudulent, it would not help plaintiff that he relied upon them. And it would not help to show that one did rely if, as has been said, he had no right to rely. See *Johnson v. Chicago, R. I. & P. R. Co.*, 107 Iowa 1, at 8. Again, plaintiff was allowed to say what is in effect a statement that it was what Hopkins said that induced settlement; that one would not have been entered into were it not for Hopkins' representations; and it is reasonable that the statement of the doctor instead of the opinion of the laymen controlled. We fail to see how there would have been a case for the jury if the testimony excluded had been admitted, which distinguishes this case from *Campbell v. Park*, 128 Iowa 181. It seems, too, there was no exception to the exclusion.

VI. Finally, it is contended to be immaterial whether those who made the representations did or did not know that same were false. This is put on the ground that a mutual mistake is also pleaded by plain-

8. APPEAL AND ERROR: issues and questions in lower court: trial theory: counter theory on appeal.

tiff, and that on that issue plaintiff may prevail, though Piersol, Richards and Hopkins did not know or believe that what they said was untrue. The statute permits inconsistent defenses. But even that express permission will not permit defenses which are not merely inconsistent with but destructive of each other. No right exists to base a *petition* upon claims of which one cannot be tenable if the other is. It is impossible to sustain a charge of deliberate fraud, and also that there was an honest mutual mistake. He who uses a falsehood, knowing or believing that it is a falsehood, and with intent to deceive and cheat, cannot be acting upon honest error. The case was not tried on that theory below and will not be here. Aside from the naked and almost casual statement in pleading that a mistake was made, the entire argument of appellant is an arraignment for deliberate fraud. If that be passed, there was still no mutual mistake which entitles to relief. That must be a mutual mistake of fact, and not error in opinion, and relief must be had in equity, or, at all events, upon terms approved by equity. *Tatman v. Philadelphia, B & W. R. Co.,* (Del.) 85 Atl. 716, 720, *is* a suit in equity, and deals with what is, beyond all question, an honest mutual mistake. A settlement was held not to be binding, but the relief granted is made to depend upon a return of what had been received in settlement. This is, in effect, a description of *Great Northern R. Co. v. Fowler,* (C. C. A.) 136 Fed. 118, and of *Nelson v. Minneapolis St. R. Co.,* (Minn.) 63 N. W. 486. And it is in cases of like effect that it is held that honesty in representing what is in fact untrue is no reason for not setting aside a settlement made because of mutual mistake. See *Pendarvis v. Gray,* 41 Tex. 326; *First Nat. Bank v. Hecht,* (Wis.) 149 N. W. 703; *Tatman v. Philadelphia, B. & W. R. Co.,* (Del.) 85 Atl. 716,

721; *Culbertson v. Blanchard,* (Tex.) 15 S. W. 700; *Caba-ness v. Holland,* (Tex.) 47 S. W. 379; *Houston & T. C. R. Co. v. Brown,* (Tex.) 69 S. W. 651; *Berry v. American Cent. Ins. Co.,* (N. Y.) 30 N. E. 254. It is said in the *Tatman* case that, in order to invalidate a release on the ground of mutual mistake the mistake must relate to a past or present fact material to the controversy, and not to an opinion respecting future conditions or results of present facts. It cites *Chicago & N. W. R. Co. v. Wilcox,* 116 Fed. 913; *Nelson v. Chicago & N. W. R. Co.,* (Minn.) 126 N. W. 902; *Houston & T. C. R. Co. v. Brown,* (Tex.) 69 S. W. 651; *Homuth v. Metropolitan St. R. Co.,* (Mo.) 31 S. W. 903; and distinguishes the *Houston* case. And the case of *Winter v. Great Northern R. Co.,* (Minn.) 136 N. W. 1089, is readily distinguishable from the case at bar. And so of *Lumley v. Wabash R. Co.,* (C. C. A.) 76 Fed. 66, and *Union Pac. R. Co. v. Artist,* (C. C. A.) 60 Fed. 365. In *Chicago & N. W. R. Co. v. Wilcox,* (C. C. A.) 116 Fed. 913, a suit in equity to rescind, approved in the *Tatman* case, complainant compromised and released a claim for a broken hip. She knew when she settled that her hip had been broken, and that it was a bad break. She was induced by the statement of her own physician, who was also the company's physician, to believe, and did believe, that she would be well within a year, and she settled upon that basis. She was mistaken, and her injury and disability turned out to be permanent. It is held that her mistake was not a mistake of fact, but a mistake in opinion or belief as to a future event, and furnished no ground for an avoidance of her release—and said:

"Again, it is not every mistake that will lay the foundation for the rescission of an agreement. That foundation can be laid only by a mistake of a past or present fact material to the agreement. Such an effect cannot be produced by a mistake in prophecy or in opinion, or by a mis-

take in belief relative to an uncertain future event. A
mistake as to the future unknowable effect of existing facts,
a mistake as to the future uncertain duration of a known
condition, or a mistake as to the future effect of a personal
injury, cannot have this effect, because these future happen-
ings are not facts, and in the nature of things are not capa-
ble of exact knowledge; and everyone who contracts in reli-
ance upon opinions or beliefs concerning them knows that
these opinions and beliefs are conjectural, and makes his
agreement in view of the well-known fact that they may turn
out to be mistaken, and assumes the chances that they will
do so.   Hence, where parties have knowingly and purposely
made an agreement to compromise and settle a doubtful
claim, whose character and extent are necessarily condi-
tioned by future contingent events, it is no ground for the
avoidance of the contract that the events happen very dif-
ferently from the expectation, opinion, or belief of one or
both of the parties."

The test to be applied is:

"Is the evidence in this case clear and convincing that
the complainant was induced to compromise her claim and
to execute her release by a mistake of a past or present fact
material to her contract?"

And see *Owens v. Norwood White Coal Co*, 157 Iowa
389, at 411; *Tatman v. Philadelphia, B. & W. R. Co.*, (Del.)
85 Atl. 716, at 718; *Kilmartin v. Chicago, B. & Q. R. Co.*,
137 Iowa 64, 68; *Johnson v. Chicago, R. I. & P. R. Co.*, 107
Iowa 1; and *Douda v. Chicago, R. I. & P. R. Co.*, 141 Iowa
82.   Again, there is a difference where, as here, the re-
lease is general.   That difference is noted in *McCarty v.
Houston & T. C. R. Co.*, (Tex.) 54 S. W. 421 (*Houston &
T. C. R. Co. v. McCarty*, [Tex.] 60 S. W. 429).   There, the
only injury considered was a broken ankle, while in fact
there were internal injuries unknown to all the parties.
It was held that, because of the general form of the re-

lease, it could not be set aside, there being no fraud, and the releasor having had an equal opportunity to know the extent and character of his injuries, and said:

"In the face of such an instrument, it cannot be said that all injuries which might be developed as a result of the accident, known or unknown, were not in the contemplation of the parties to the instrument, and were not embraced within its terms."

It is said in *Lumley v. Wabash R. Co.*, (C. C. A.) 76 Fed. 66:

"If one agrees that he will receive a given amount in satisfaction and settlement of his damages sustained through a particular accident, it is not essential that every possible consequence of the tort shall be mentioned, considered, or enumerated. The subsequent discovery by one giving such a release that he was worse hurt than he had supposed, would not, in and of itself, be ground for setting aside the settlement or limiting the release."

In *Reddington v. Blue*, 168 Iowa 34, we overruled the general assertion that only in a court of equity may a settlement be avoided. Another contention which we held against is that no settlement might be set aside upon any ground unless the consideration received was returned. Addressed to what then was decided, both conclusions are right. They but hold that one who pleads fraud in settlement may avoid the settlement without going beyond an offer to credit what he has received upon what the jury may allow him. See *Owens v. Norwood White Coal Co.*, 157 Iowa 389, at 394. But into the *Reddington* case crept a statement that our procedure is so liberal that no tender was required if mistake was interposed. It is pure dictum, and should not be established. Grant that *mistake* may be urged in a law action to set aside a settlement. It cannot follow that it may there be done without

11. CONTRACTS:
rescission:
mutual mis-
take: failure
to tender con-
sideration re-
ceived: effect.

doing what equity demands as a condition to such relief. If there were no other reason for eliminating the claim of mutual mistake, the failure to restore what was received in settlement is fatal to relief for mutual mistake.

We are of opinion that the judgment appealed from must be—*Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.