A. C. CAMPBELL v. D. H. PARK, ET AL., Appellants.

**Sale of corporate stock:** FRAUD: DAMAGES. One who has been
1  defrauded by the deceit and misrepresentations of the owner of corporate stock and thereby induced to purchase the same, may recover damages for the fraud without offering to surrender the stock.

**Principal and agent.** In the sale of corporate stock through an
2  agent, the principal is charged with the agent's knowledge of his own false representations as to the value of the stock.

**Directed verdict:** REVIEW. In reviewing the correctness of the
3  court's ruling in directing a verdict, the appellate court may consider such evidence as was proper to go to the jury, though stricken out by the trial court.

**Evidence of ownership.** In an action on notes given for cor-
4  porate stock, defendant pleaded that the stock was worthless and that the notes were procured by false representations as to the condition of the company and value of the stock. Held, that evidence that machinery in the company's plant which was represented to constitute part of the corporate assets, did not belong to it and was taken away by persons claiming to own the same, was admissible, although the witness did not show actual knowledge of the claimed ownership by such persons.

**Evidence:** VALUE OF CORPORATE STOCK. One induced to purchase
5  worthless corporate stock on false representations as to its value, may show the insolvency of the corporation immediately after the purchase, as bearing on the value of the stock at the time of the transaction.

Same. The manager of a corporation is competent to testify as to the solvency of the concern without in the first instance detailing the items of fact on which his general statement is made.

*Appeal from Carroll District Court.*— HON.   S.   M. ELWOOD, Judge.

SATURDAY, DECEMBER 17, 1904.*

ACTION on promissory notes signed by defendant D. H. Park, with E. C. Park as surety. The defendant pleaded that the notes were procured by fraud, and were without consideration and void; and the defendant D. H. Park, by way of counterclaim, asked judgment against plaintiff for. damages on account of false and fraudulent representations made by plaintiff and relied on by defendant, whereby said Park was induced to pay $1,700 in cash, and execute the notes sued on, for the purchase from plaintiff of certain shares of stock in a corporation known as the Daniels Foot Cycle Company, which stock was without value and worthless. At the conclusion of defendant's testimony, plaintiff's motion for verdict in his favor on the notes, and against defendant D. H. Park upon his counterclaim, was sustained, and judgment rendered accordingly, from which judgment defendant appealed. As no separate issue was raised with reference to the liability of E. C. Park, D. H. Park will be referred to as sole defendant and appellant.— *Reversed.*

*F. M. Powers* and *W. E. Saul,* for appellant.

*Salinger & Korte,* for appellee.

McCLAIN, J.— The allegations of defendant's answer made by way of affirmative defense, and those made by way

_____

* This case is published. out of chronological order by reason of an application for rehearing.

of counterclaim, are not in any way separated in the pleading; but, as plaintiff interposed no objections on this ground, and, by asking a directed verdict in his favor on the notes and against defendant on his counterclaim, he recognized the pleading as sufficient to interpose both an affirmative defense and a counterclaim, we shall consider the case as involving the two distinct issues of the right of plaintiff to recover on the notes as against the defense of fraud and want of consideration, and the right of defendant to recover damages for deceit.    The evidence introduced was treated as applying indifferently to the defense and the counterclaim, and properly so, for the two issues involved, in common, the elements of fraud on the part of the plaintiff and reliance thereon to his damage by defendant.

The evidence for defendant tended to show that he was induced by one Gallund to enter into negotiations with plaintiff for the purchase of thirty-four shares of stock in the Daniels Foot Cycle Company, of which company plaintiff was the president and Gallund was the vice president; that plaintiff referred defendant to Gallund as plaintiff's agent for the purpose of negotiating the sale of the stock, telling him that whatever arrangements he made with Gallund would be satisfactory to plaintiff; that thereupon Gallund made written representations to the defendant with reference to the value of the stock mentioned, which were that the capital stock of the company was $20,000, all paid up, and that it had assets of the value of about that amount, consisting of machinery, raw material, and manufactured product, and cash in treasury, and that its liabilities were about $1,000, a large portion of which was on long-time payments, and that it had on its books orders for its manufactured products — a so-called foot cycle, or kind of roller skate — several hundred pairs of which had been sold for spot cash on delivery; that, relying on these representations, defendant concluded with plaintiff the purchase of plaintiff's stock for $4,000, $2,000 of which was paid by

the execution of the notes in suit, and $1,700 of the balance by cash advanced to the company for use in its business; that Gallund's written representations were shown to plaintiff at the time the sale of the stock was consummated and the notes executed, and that these representations were acquiesced in by plaintiff as true; that defendant relied on these representations, and had no other knowledge or means of knowledge as to the value of plaintiff's stock, and that the representations were substantially false in material respects, and the stock worthless; that, soon after the purchase of the stock, defendant became the general manager of the business of the corporation, and, as such manager, became aware of the falsity of the representations, especially the representation as to the indebtedness of the company, which greatly exceeded the sum of $1,000, and amounted in fact to about $9,000, and learned that the machinery, which constituted a large part of the assets of the company, did not belong to it, but was in fact held by lease or conditional sale, under which it was taken away by the owners or sellers thereof; that the foot cycle did not work, and could not be sold; and finally that Gallund, while acting as plaintiff's agent in effecting the sale of the stock to defendant, was aware of the substantial falsity of these representations.

Counsel for appellee raise some question as to the sufficiency of the affirmative defense of falsity and want of consideration, on the ground that no offer was made by defendant to surrender the stock to plaintiff; but it appears by the allegations of plaintiff's petition, as well as by the evidence, that the certificates of stock remained in the possession of plaintiff as security for the notes, and it was therefore wholly unnecessary, and, indeed, impossible, for defendant to return or surrender the certificates.

So far as the counterclaim for damages is concerned, it would, of course, be immaterial that the stock had been retained by the defendant, for, if plaintiff was guilty of

actionable deceit in his representations, or the representations

**1. SALE OF COR-** of his agent, with reference to the value of the
**PORATE STOCK:**
**fraud;** stock, defendant could recover damages there-
**damages.** for without regard to the return of the stock.
*Mentzer v. Sargeant,* 115 Iowa, 527; *Nysewander v. Low-man,* 124 Ind. 584 (24 N. E. 355); *Johnson v. Culver,* 116 Ind. 278 (19 N. E. 129); *Drake v. Holbrook,* (Ky.) 66 S. W. 512; *Miller v. Barber,* 66 N. Y. 558; *Hubbell v. Meigs,* 50 N. Y. 480; *Perry v. Rodgers,* 62 Neb. 898 (87 N. W. 1063).

Of course, if the stock was of some value, the defendant would be entitled to recover in damages only the difference between what it was really worth and what it would have been worth if as represented. But this is not here a material inquiry, in view of the directed verdict for plaintiff on defendant's counterclaim. Moreover, the only evidence relating to the value of the stock was that it was entirely worthless.

Defendant's right to recover on his counterclaim for deceit could only be established by proving that plaintiff was affected with knowledge of the falsity of the representa-

**2. PRINCIPAL** tions made, but he would be charged with such
**AND AGENT.** knowledge on the part of his agent making the representations in connection with the negotiation of the sale. *Boddy v. Henry,* 113 Iowa, 462; *Mankin v. Mankin,* 91 Iowa, 406; *Stevens v. Bradley,* 89 Iowa, 174; *State v. Cadwell,* 79 Iowa, 432; *Eadie v. Ashbaugh,* 44 Iowa, 519. That Gallund, while acting as plaintiff's agent in negotiating the sale of the stock to defendant, had full knowledge of the falsity of material representations made by him affecting the value of the stock, appears to us to be beyond question; but, in view of the directed verdict, it is sufficient to say that there was evidence to go to the jury tending to show such knowledge.

It is argued for appellee that all the evidence tending to show the falsity of the representations, and knowledge

of such falsity on the part of Gallund, was stricken out by the court before ruling on the motion to direct a verdict, and that therefore there was no error in directing the verdict, whatever error may have been committed in striking out the evidence. But in the first place, we think that where the evidence has been actually received, and then erroneously stricken out, we may consider such evidence as should have been allowed to go to the jury, in passing upon the correctness of the action of the court in directing a verdict, and, further, that there was evidence to go to the jury, even after the various motions of the defendant to strike out evidence had been sustained. But for the purposes of the case, it is wholly immaterial whether the error was in directing a verdict or in striking out evidence, for, if the court erred in either case, there must be a reversal of the case.

3. DIRECTED VERDICT: review.

The defendant testified that the machinery, which was represented to constitute a considerable part of the assets of the company, did not belong to it, but, to his knowledge, was taken away by persons claiming to be the owners thereof. This evidence was stricken out on the ground that defendant did not show any actual knowledge as to whether the persons who took it away did so rightfully or wrongfully. But we think it can hardly be seriously contended that the fact of the machinery being taken away under claim of right, and without resistance on the part of those interested in the company, did not tend to show that it did not belong to the company. The court should have allowed the testimony of the defendant as to the machines being taken away, to remain in the record or to be introduced when offered.

4. EVIDENCE OF OWNERSHIP.

It is also contended for appellee that defendant's testimony as to the financial condition of the company immediately after his purchase of the stock, when he became manager of its affairs, was properly stricken out, and that there was no competent evidence of its insolvency, or

that its indebtedness amounted to nearly $9,000, for the purpose of showing that the representation that its debts did not exceed $1,000 was false. That the fact of subsequent insolvency may be shown, as tending to prove insolvency at a prior date, the conditions in the meantime remaining substantially the same, was decided in *State v. Cadwell,* 79 Iowa, 432.

5. EVIDENCE: value of corporate stock.

That defendant, familiar with the affairs of the corporation, as its manager, soon after his purchase of the stock, was competent to testify to whether the company was solvent or not, seems to us too plain for argument. No doubt, he could be required on cross-examination to go into details, for the purpose of discovering whether his statement was credible. But insolvency is one of those general facts, like possession, value, and others of like character, which in many cases can be directly testified to by one in a position to know, without the items of fact on which the general statement is based being first disclosed. The same suggestion is applicable to the contention that defendant's evidence as to the indebtedness of the corporation was properly stricken out. How could the defendant show the general indebtedness of the corporation more satisfactorily than by the testimony of the person who was managing its business soon after the indebtedness was claimed to exist, no change of circumstances having occurred in the meantime? Must he hunt up the various creditors to whom sums of money were paid, and prove, as to each, that his claim was genuine and not fictitious, and then be dependent on detailed calculations to show that it was approximately $9,000, instead of $1,000, as represented? We are clearly of the opinion that the testimony of defendant, as manager, should have gone to the jury for what it was worth, subject, of course, to any discredit that might be thrown upon it by cross-examination as to knowledge of the details of such indebtedness.

6. SAME.

But we have protracted this opinion beyond proper

limits.    We reach the conclusion that the court erred in striking out items of evidence already referred to; that it erred in directing a verdict for the plaintiff on the notes, in view of the evidence as to fraud and want of consideration; and that it erred in directing a verdict for plaintiff on defendant's counterclaim.    Its judgment is therefore *reversed*.