LINCOLN TENT AND AWNING COMPANY, APPELLEE, V. MIS-
SOURI PACIFIC RAILWAY COMPANY, APPELLANT.

FILED MARCH 28, 1910.    No. 15,960.

1. **Carriers:** BILL OF LADING: PAROL MODIFICATION. As a general rule
   a bill of lading issued by a common carrier to a shipper con-
   taining a receipt for property received for shipment constitutes
   the contract between the carrier and shipper. However, the
   rights thereby conferred are not absolute or inalienable, and
   such contract may, like any other written contract, be changed
   or modified by subsequent parol agreement between the shipper
   and carrier.

2. ———: AUTHORITY OF AGENT: EVIDENCE. Evidence examined and
   discussed in the opinion *held* sufficient proof of the identity of
   defendant's agents, and of their authority to bind defendant by
   the shipping agreement in controversy.

APPEAL from the district court for Lancaster county:
ALBERT J. CORNISH, JUDGE. *Affirmed.*

*B. P. Waggener, J. W. Orr* and *A. R. Talbot,* for appel-
lant.

*Morning & Ledwith, contra.*

REESE, C. J.

Plaintiff alleged in its petition, among other things,
that on the 11th day of August, 1905, it delivered a ship-
ment of tents and tent fixtures, fully described, to defend-
ant for shipment from Lincoln, Nebraska, to Guthrie,
Oklahoma, and that defendant promised and agreed to and
with plaintiff to deliver the shipment to the place of con-
signment not later than the 15th day of the same month;
that plaintiff informed defendant's agent that said tents
and tent fixtures were leased to the consignee for use at
Guthrie, Oklahoma, during a session of the Oklahoma
Epworth Assembly which was to be in session from Au-
gust 16 to 24, and informed said agent that unless said
goods were delivered to the consignee on or before the

15th it would be useless to ship them, and defendant agreed to make such delivery at the time specified, and, relying upon said promise, plaintiff delivered the shipment to defendant with the information that the freight was to be paid by the consignee, both to and from Guthrie; that the property was to be shipped from Lincoln station on the train leaving said station at 4:40 o'clock P. M. of the said 11th day of August, and was delivered to defendant a sufficient length of time before the departure of said train; that defendant negligently failed to transmit the property on said train, but held the same until the same hour of the next day, the 12th; that, upon plaintiff being apprised of such failure, it notified defendant that, unless there was still sufficient time to transport and deliver the property to the consignee by the date specified, it would be useless to send out the shipment, when defendant again assured plaintiff that there was sufficient time to make and complete the shipment within the time limited, and verbally agreed to do so; that, had defendant transported the property with reasonable diligence and without unnecessary delay, its said agreement could and would have been fulfilled; that the consignment was unreasonably delayed, both on the 11th day of the month and thereafter, so that it did not reach Guthrie until the 21st day of said month, which was too late for use by the consignee, who for that reason refused to receive the tents and tent fixtures, and they were by order of defendant reshipped to plaintiff at Lincoln, and plaintiff was required and obliged to pay, and did pay, the freight charges both ways, amounting to $71.84, and also lost the rental of said tents and tent fixtures, which was of the value of $71.50, and that by defendant's failure plaintiff had been damaged in the total of said two items amounting to the sum of $143.34, for which, with interest, it asked judgment. Defendant answered with both general and specific denials, and alleging that it made no such contract as set out in the petition; that the shipment was received in the regular course of business, without any special or

oral contract to deliver the property shipped at its des-
tination at any particular or specified time; and that the
only contract made was embodied in the bill of lading.
It was further alleged that no agent at Lincoln was au-
thorized or empowered to make such an agreement as
alleged in the petition, and if any such agreement was
made by any agent it was wholly without the authority or
power of such agent to bind defendant thereto; that at
the time of the delivery of the consignment to defendant
on the 11th the plaintiff knew that the train by which it
would have to be transported left the Lincoln station at
the hour of 4:40 o'clock P. M., and that defendant would
not receive freight for shipment thereon after the hour of
4 o'clock P. M., and that the goods were not delivered to
defendant until 4:50 P. M., and could not be shipped on
said train; that it received said shipment in the usual
course of business, and carried the same to Kansas City
over its road, and there delivered it in good order to the
Atchison, Topeka & Santa Fe Railroad Company, its con-
necting carrier, to be transported to the consignee at
Guthrie, and by so doing it fully complied with the terms
of its contract. A copy of the bill of lading is attached
to the answer and is in the usual form. Plaintiff replied
to the answer by general denial, and also a specific denial
that the bill of lading attached to defendant's answer was
the contract under which plaintiff's goods were shipped;
alleged that a similar paper was delivered to the teamster
who delivered plaintiff's property to defendant, but that
it did not embody the terms of the agreement, was not
signed by plaintiff, nor its provisions called to plaintiff's
attention or made known to it at the time it was deliv-
ered to the teamster or at any time thereafter; that the
shipment was made under the verbal assurance and agree-
ment made by defendant that the goods should and would
be forwarded and delivered at their destination as alleged
in the petition. It is further alleged that by the assurance
of defendant that the goods, if shipped on the 12th of
August (the next day after the delivery to defendant),

would be delivered at Guthrie on or before the 15th, plaintiff was induced to permit the shipment to be made on the 12th, the defendant well knowing that plaintiff would not allow such shipment to be made but for said assurance of defendant. The cause was tried to a jury, who returned a verdict in favor of plaintiff for the sum of $156.75, and upon which judgment was rendered. A motion for a new trial was filed and overruled. Defendant appeals.

It is contended by defendant: First, "the bill of lading issued by the railway company to appellee constitutes a written contract covering the movement of this freight, and, being in writing, controls as to the rights of the parties"; second, "there is no competent proof in the record that any special contract was made, fixing a specified time at which the shipment was to be delivered to consignee at Guthrie, Oklahoma"; third, "there is no competent proof in the record showing that parties with whom plaintiff undertook to negotiate for special contract were authorized or empowered to make any such contract as agents for the appellant"; and, fourth, "the positive proof and testimony in the record shows that there was no special contract for the delivery of said goods, and hence the verdict is contrary to the evidence and not sustained either by the law or the evidence in the case."

1. The claim that a bill of lading, issued by a common carrier, is, and contains, the contract between the shipper and the carrier may, for the purposes of this case, be admitted as correct, as a general rule, but, even if true, it does not necessarily follow that the rule should be applied here. As claimed by plaintiff and testified to, the tents and fixtures were delivered to defendant upon its agreement to deliver the consignment at Guthrie by the 15th of the month; that upon the delivery of the property to defendant on the 11th it issued the bill of lading to the drayman, and not to plaintiff, and that instrument did not come into the possession of plaintiff, nor did plaintiff know of its contents until long after the return of the

property to Lincoln over another line of railroad, with the freight charges and the charges of defendant for the freight to Guthrie from Lincoln charged against plaintiff; that the consignment was not sent out by defendant on the 11th, and on the 12th plaintiff's manager called upon defendant's agent in charge of its city office and informed him of the failure to ship, with the statement, in substance, that there would be no use of sending the tents unless they could be delivered at Guthrie on or before the 15th; that the agent with whom this conversation was had then called up the agent at the station, and had a consultation with him over the telephone, only a part of which could be heard by plaintiff's manager, but enough to apprise him that the subject of delivery by the time named was under consideration, after which the agent at the city office assured him that there was sufficient time to make the delivery, and upon that assurance the tents and fixtures were allowed to remain at defendant's station and be forwarded that afternoon. Should it be conceded that the bill of lading issued on the 11th and delivered to the drayman was a delivery to plaintiff who was charged with knowledge of its contents at the time it was received by the drayman, yet we know of no rule which would prohibit that contract from being changed or modified by the subsequent agreement and undertaking made by defendant on the 12th. *Morrissey v. Schindler*, 18 Neb. 672; *Delancy v. Linder*, 22 Neb. 274; *Steidl v. Minneapolis & St. L. R. Co.*, 94 Minn 233.

2. It is believed that the second contention of defendant is sufficiently referred to in the foregoing. The evidence offered, while conflicting, was competent. Its weight was for the jury. In addition, it might be said that there was evidence offered and admitted showing that defendant was informed of the purpose for which the shipment was made, to what use the tents were to be applied, and at what time they were to be delivered in order that they might be utilized.

3. As to the third contention, we cannot agree with

counsel for defendant. It was conceded upon the argument, and must be accepted as the law, that the proper agent at a shipping point has authority to enter into contracts of the character alleged. All the business of the great railroad companies, and of corporations generally, must of necessity be transacted by agents. The corporation, of itself, without the intervention of an agent can make or enter into no contract. Agents are placed at each shipping point for this very purpose. Contracts made by them within the reasonable scope of their employment and business are binding. They are located at the stations, or in the city offices in the larger cities, for the purpose of managing the transportation from the points where the stations and offices are located. No one else is supposed to be in control. Patrons are not expected, nor does the law require them, to ascertain by inquiry and investigation whether the person found in charge of the business of the station is there wrongfully or without authority. The agent at the station was called by telephone on the 11th, and some one answered the call. On the 12th plaintiff's president and manager called at the city office and found a person in charge and with whom he conferred upon the subject of making the shipment on that date. The party at the city office called up the agent at the station, and the subject was gone over between them and the agreement was made with plaintiff's manager. This was sufficient, and plaintiff's manager had the assurance that he was dealing with the person having the requisite authority.

4. The fourth point of contention cannot be sustained. Should we hold that the conversation had with the party at defendant's station on the 11th, when taken in connection with the bill of lading issued on that day, was not enough to establish the contract, we would be yet met by what occurred on the 12th, before the shipment was sent out, which must be held sufficient and made with agents having authority.

It is further contended that "the verdict is contrary

to the evidence, and is not sustained by competent proof and is against the law and the evidence in the case." It must be conceded that in some particulars the evidence is not as precise and clear as might be desired, yet the facts detailed were sufficient for submission to the jury and the evidence was sufficient to sustain the verdict.

Objection was made to the admission of the testimony of witnesses detailing conversations had with persons over the telephone who claimed to represent defendant, and with the person at the city office (in person and "face to face"), "concerning the routing of the shipment in question and as to the time of making delivery at Guthrie, Oklahoma." Upon objection being made to the admission of this evidence, the court admitted it "on the promise of the plaintiff that he will show that the information and conversation had with this person (through the telephone) was known by the regular shipping agent afterward, and before shipment came to the knowledge of the shipping agent of the Missouri Pacific Railway Company." The latter part of this ruling is not readily comprehended by the writer hereof. We are inclined to think the reporter may have misunderstood the language of the presiding judge. The ruling must have been to admit the testimony of the witness upon "the promise of the plaintiff that it will show that the conversation had with this person was known by the regular shipping agent afterward and before shipment." If this is what was meant there was no lack of proof upon that point, subsequently submitted. The court must have so understood that the conditions were complied with, else the motion for a new trial would have been sustained. As we have hereinbefore seen, the contract made at the city office, to say nothing about what occurred on the 11th by the use of the telephone, was sufficient.

We find no error in the record calling for a reversal of the judgment. It is therefore

AFFIRMED.