JAMES A. COAD, Appellant, v. PENNSYLVANIA RAILWAY COMPANY et al., Appellees.

TRIAL: Recoverable and Non-Recoverable Claims—Directed Verdict
1  in Toto. Verdict should not be directed *in toto* against plaintiff when one of his claims presented a jury question. So held where plaintiff failed in his claim of loss of gasoline in transit, but had a right to claim freight overcharge on amount delivered.

EVIDENCE: Secondary—Bills of Lading. Duplicate bills of lading
2  are admissible when it is made to appear that the originals were deposited with the defendant carrier, and not produced on demand.

EVIDENCE: Statements of Non-Parties. In an action by a con-
3  signee against a carrier for loss of property in transit and for freight overcharges, an invoice by the shipper, setting forth what was shipped, and other correspondence between the shipper and consignee as to the damages done to the shipment are wholly inadmissible against the carrier.

EVIDENCE: Competency—Books and Memoranda. Detailed prin-
4  ciples stated, governing the admissibility of books of third parties to the suit and the competency of witnesses to speak therefrom.

EVIDENCE: Testimony Based on Records Made by Another. A wit-
5  ness may not testify to the contents of a shipment and the detailed history thereof, when his sole basis therefor is a record made by his bookkeeper.

EVIDENCE: Original Entries Against Third Party. Books kept
6  by a shipper, which show the material facts involved in a shipment, are not admissible in an action by a consignee against

the carrier, even though such books are kept as books of original entries. It follows that books of lesser completeness are likewise inadmissible.

CARRIERS: Details of Shipment—Competency of Witness. One may not testify as to the details of a shipment, and base it on nothing more than entries in a special book kept by a shipper and various employees.

CARRIERS: Details of Shipment—Competency of Witness. One may not testify as to the contents and destination of a shipment from the naked fact that he made out a bill of lading.

APPEAL AND ERROR: Directed Verdict—Improperly Excluded Testimony. On the question of the correctness of a directed verdict for paucity of evidence, the court, on review, must treat improperly excluded evidence as in the record.

CARRIERS: Loss in Transit—Evidence. Evidence reviewed, and held sufficient to carry to the jury the question of the *amount* of the shipment and of the *shortage* at point of destination.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

DECEMBER 12, 1919.

SUIT to recover for an alleged shortage in gasoline carried by the defendants, with which is coupled what is, in a sense, an alternative claim: to wit, a demand for repayment of excess freight charges. That is to say, the plaintiff contends, first, that the carriers delivered less gasoline to him than he had bought, and than had been placed with the carrier; and that, if this be not so, he was charged by freight charges for more gasoline than defendants had, in fact, carried. A verdict was directed against plaintiff, and he appeals.—*Reversed and remanded.*

*J. C. McConkey,* for appellant.

*Davis, Hise & Adams* and *Sargent, Strong & Struble,* for appellees.

SALINGER, J.—I. Loosely stated, it was error to di-

rect a verdict against the plaintiff *in toto,* because, in an alternative way at least, he was entitled to go to the jury on the claim that the carrier had delivered less gasoline than had been delivered to it. And if, for the sake of argument, a verdict should have been directed against him on this claim, it still remained his right to show that he had paid freight on a certain number of gallons of gasoline, and that a less quantity was delivered to him. If the carrier could demand a holding that there was no shortage, and that it delivered all it received, still, if it charged freight on more than it delivered, failure to prove shortage did not destroy the right to go to the jury on how much freight overcharge there had been. The general line of objection sustained was that the testimony was incompetent, irrelevant, and immaterial, and because it has not been shown there has been any loss. These reason in a circle, and urge a *non sequitur.* They say one may not show that he had a loss, and that, if this contention be upheld, that will prevent him from showing that he has been overcharged in freight. In other words, if it appear that a carrier received 100 gallons of gasoline, he charged freight for 100 gallons, and delivered but 90, he owes for the value of the 10 gallons, and also for having charged freight on 10 gallons that, so far as the consignee is concerned, were never carried. If there is no shortage because the carrier never received more than 90 gallons, then, if he charged on 100 gallons, he overcharged to the extent of 10 gallons. To this, the assertion in the motion to direct verdict that no negligence of the carrier is shown is irrelevant. It is not a question of negligence. It makes no difference how the oil was lost, unless it be shown that the loss was due to the act of God, or the like. It is not a question of negligent handling, but of a failure to perform what is a mixture of contract and duty: to wit, to deliver safely what

*1. TRIAL: recoverable and nonrecoverable claims: directed verdict in toto.*

had been received. If not delivered, the mere fact that no negligence in handling was shown has nothing to do with the case. Of course, that is true of overcharge in freight. The fact that the carriers were not negligent certainly does not authorize to charge for more than was carried.

The plaintiff made profert as follows: To prove by duplicate freight bills and bills of lading when, from where, and to whom gasoline was shipped over the lines of defendants, and the amount of gasoline so shipped.

**2. EVIDENCE: secondary: bills of lading.**

He made like profert to show how much was paid for carriage. The court sustained objection that same and testimony tendered by it were incompetent, irrelevant, and immaterial, secondary, hearsay, "and in no way binding upon either defendant." The real avoidance attempted is found in the statement of counsel for the railroad that "the defendants are unable to produce any of the papers; the lapse of time makes it impossible to locate any such papers, if any ever existed, and I have heretofore told Mr. McConkey we were unable to locate any such records of such shipment." Apparently, upon this excuse said objection was sustained.

The plaintiff, as he was required to do, filed his claim. He filed it with the delivering carrier, and seems to have attached the original bills of lading or waybills to the claim —which it was perfectly proper to do. He was not permitted to introduce duplicate freight bills, bills of lading or waybills, and the like, and thereby to show the number of gallons that had been delivered to the initial carrier. He made demand for the originals, and the defendants did not produce them. The excuse has been stated. We think the duplicates offered should have been received. See *Simons v. Petersberger*, 171 Iowa 564; *Cochburn v. Hawkeye C. M. Assn.*, 163 Iowa 28; *Fremont Can. Co. v. Pere Marquette R. Co.*, 180 Mich. 283 (146 N. W. 678). And the tes-

timony of Von Tacky that a bill of lading was made was a link that should not have been stricken. Certainly, this is true of refusing the profert to show how much was paid for carriage. Grant, for the sake of argument, that no shortage was shown. Yet, plaintiff had the right to show that he received a stated number of pounds, which, whether constituting a shortage or not, were still all he got. Upon that, he certainly had the right to show that he paid freight on more pounds than the number delivered.

II. If we apprehend rightly, it is the position of appellees that certain depositions were justifiably ruled out; that, as a result, there was no competent evidence of how much gasoline had been delivered to the initial carrier; and that, therefore, there is and could be no competent evidence of shortage.

This position brings up for consideration: (1) Was the evidence rightly excluded? (2) If so, is there enough competent evidence to send shortage to the jury?

2a. The exclusion of Exhibit A, an invoice by the shipper, setting forth what was shipped, and other correspondence between them as to damage done to the shipment, was proper. Same is not binding upon the carrier, though the shipper and consignee have thereby agreed upon the matter. *Yarcho v. Chicago, R. I. & P. R. Co.*, 183 Iowa 1180, at 1182. The exclusion of much testimony for which it is claimed that it tended to show when, from where, by whom, and to whom the shipment was made, and who did the carrying, was, in any event, harmless. The only controversy is on how much gasoline the shipment contained when delivered to the initial carrier, what shortage, if any, there was on delivery, and whether, in any event, if there was no shortage, there was not an excessive freight charge. None of

3. EVIDENCE: statements of nonparties.

the matters excluded cramp the plaintiff in his attempts to prove these vital matters.

The exclusion of other testimony was rightful, under the following rules or propositions:

2b. (a) Where one testifies he has no personal knowledge, except what he gleans from books and records in his office, kept by his bookkeeper, any attempt on his part to state from where a railroad shipment was made, when made and by whom, to whom and the contents of the shipment, is vulnerable to the objection that it is incompetent, irrelevant, and immaterial, and not the best evidence.

4. EVIDENCE: competency: books and memoranda.

(b) The naked fact that one has "a record" concerning the details of a shipment, etc., does not qualify him to speak as to such matters, where he has no personal knowledge concerning the same.

(c) One who has no personal recollection of a matter, except from a record kept by another, may not testify to a transaction purported to be disclosed by such record.

5. EVIDENCE: testimony based on records made by another.

(d) As between a consignee, claiming damage, and the carrier, entries in the regular book of the shipper as to the material matters involved in the dispute of the shipment are inadmissible, although such books show all said matters in dispute.

6. EVIDENCE: original entries against third party.

Of course, the ability of a person to examine such books and make copies therefrom is no more admissible than are the contents of such books themselves. And this is so though said books comply in every way with the requirements making books of account admissible. This is in no way in conflict with the rule that books of account, kept regularly in the ordinary course of business, and as a part of the merchant's system of accounts, are, in a proper case, admissible to fix the date of a sale

made by him. *Gibson v. Seney,* 138 Iowa 383. Nor is it in conflict with the rule that, where the business involves nothing but minute items, like the daily current ticket sales at a railroad station, that a book which cannot be altered as to the record of sales of some particular day without unbalancing the record of other days, may, in a proper case, be used as evidence. *State v. Brady,* 100 Iowa 191. It is not in conflict with cases like *Edwards v. City of Cedar Rapids,* 138 Iowa 421, which states the rule that an official entry, made in the course of official duty, is admissible in proof of facts therein recited.

(e)  Where entries in a special book are made when doing certain work with reference to a shipment, and are made by several, and some do not testify, the one who does may not testify from entries in the special book kept by him and the others jointly, as to the details of the shipment.

7. CARRIERS : details of shipment: competency of witness.

(f)  It is general books of account in their totality, and kept in the regular course of business, which, on proper foundation, are admissible even for the keeper of the books. And the rule of necessity which permits so using such books does not apply to a special memorandum record kept by some employee for himself, even though he makes entries in same at or about the time when he performs his work.

(g)  The naked fact that someone charged to load a car makes entries in a memorandum book, no part of the general books of account of the business, and makes up such entries at the time, will not qualify him to state what the contents of the shipment were, even though such contents are entered in such book.

(h)  Information gathered wholly from a "journal," in which the witness made entries made up from figures and data given by other persons who attended to the loading of the commodity shipped, and of which loading the witness has no knowledge, should not be received.

(i)   One who speaks from entries in a book other than the regular general books of the business can in no event testify as to entries in such special book which are made by others than himself.

(j)   One who has no personal knowledge as to the matter in inquiry may not testify as to what others did in the matter.

(k)   The naked fact that one bills a car which was loaded by another, he having no personal knowledge of the loading, does not qualify him to speak to the contents, starting point, destination, consignee, or time of shipment.

8. CARRIERS: details of shipment: competency of witness.   (1)   One who does not issue shipping receipts or bills of lading, and sees them for the first time when a witness, and has no personal knowledge of the subject of such papers, may not state whether such papers correctly state the particulars as to a shipment made.

(m)   The mere fact that a witness knows a bill of lading was in existence, or that he has seen it or a duplicate of it, does not qualify the witness to say that such paper correctly states the details of the shipment.

(n)   And even one who has made out such bills of lading, shipping receipt, and the like, is not thereby qualified to say what the contents of the paper are, and may not say that the shipment was such as said paper describes, unless it be in a case wherein either shipper or consignee are impleading the carrier for shortage or overcharge.

(o)   The naked fact that one who has charge of correspondence between seller and buyer, and of approving his orders, and that he has advised the buyer of the details of the shipment, is no evidence against the consignee of the truth of the matters advised of, and is, of course, no evidence in a suit between either shipper or consignee with the carrier.

(p)   One may not testify that a shipment was consigned to a certain destination and consignee, upon no foundation except saying that, if a shipment is consigned to a certain place or consignee, it is supposed to go there.

(q)   The naked fact that a party makes out a bill of lading does not qualify him to testify that it is the custom to send each shipment to its destination, and that a particular one was sent to the destination as set forth in such bill of lading, and containing what such bill recites.

(r)   One who has no personal knowledge is not competent to testify because he refreshes himself by consulting some book or record which has no statement on the matter to which he is attempting to testify.

This is not in conflict with the general rule found in *Phoenix Fire Ex. Co. v. Sinclair & Co.*, 169 Iowa 564, which, in effect, holds no more than this:   In a controversy between attorney and client, and on the question of number of days of service rendered, the attorney may, to aid his memory, use the book of original entries of the firm, and a slip upon which dates have been gathered from the book of original entries, though none of the entries in the book are in the handwriting of the witness, and were written by the bookkeeper, but under the direction of the witness, where the witness was familiar with them at the time, and knew their correctness at such time, it being held that, so far as the book was concerned, the familiarity with the entries at the time they were made is clearly sufficient to enable him to refer to them as an aid to his memory; that the slip was merely of temporary convenience; that he could, at the time, verify their accuracy from the books; and that, moreover, the only objection made was that the entries were not made by the witness, it being further said he was clearly competent to testify to his best recollection as to the extent of services rendered, and clearly the use of said memoranda tended to the aid of such recollection, and to render the same more definite and accurate.

III. But does it follow, from the fact that there is no competent evidence from persons who sold the goods and directed their shipment as to how much gasoline was actually shipped, that it was not for a jury to say in this case whether or not there was a shortage? Suppose there were no evidence of any kind as to what happened at ·the time when the shipment was started, and the carrier would admit that it used or spilled a stated part of the shipment. Would it make any difference that there was that paucity at the starting end? Plaintiff was prepared to prove, and was not permitted to prove, what bill of lading and the like issued by the defendant contained. We have already said this should have been received. On the authority of *Campbell v. Park,* 128 Iowa 181, and *Yocum v. Husted,* 185 Iowa 119, on review of whether it was right to direct a verdict, that which should have been received is treated as received. So we have what the law makes an admission on part of the carrier as to the size of the shipment received by the carrier. While such evidence is not receivable, except where such suit pends against the carrier, it is receivable there.

9. APPEAL AND ERROR: directed verdict: improperly excluded testimony.

Admissions made by the agent of the carrier, or agreements in shipping contracts, may work an admission on part of the carrier. *Lincoln T. & A. Co. v. Missouri P. R. Co.,* 86 Neb. 338 (125 N. W. 603) ; *Prew v. South Dak. Cent. R. Co.,* 37 S. D. 72 (156 N. W. 582). And bills of lading and waybills may work admissions as to what articles were delivered to the carrier for shipment. *Chicago, M. & St. P. R. Co. v. Johnston,* 58 Neb. 236 (78 N. W. 499). We think that the documents which plaintiff had filed with his claim, and which the carrier has failed to return to him, send to the jury the first part of the equation: to wit, how much gasoline was delivered to the carrier. Of course, that does not prove a shortage. It is necessary to have

some evidence, in addition to evidence of how much was de-
livered to the carrier. It is necessary to have some evi-
dence as to how much the carrier delivered to the consignee.
And we think there was enough evidence on that head to
send shortage to the jury.

The plaintiff testified, without objection, that he
scraped off the manhole and measured the shortage; that
he used a 3-foot rule, used for showing the number of
inches of shortage, and a scale, giving the
number of gallons; that, on this measure-
ment, he found a shortage of 289 gallons.
Later, he repeated that they took off the man-
hole to unload; that he then saw the gasoline was short,
measured it, and found it was 11 inches short. He said this
without objection. But after it was said, defendant had
stricken out merely the words "I saw it was short." Up to
this point, there was no objection to this positive and defi-
nite evidence, both on the existence and the amount of the
shortage. Following this elimination by motion to strike
came this:

"Q. Did you measure it? A. I measured it, and found
it was 11 inches. I used the scale again, and it showed it
was 487 gallons short."

After this answer was in, without any objection, de-
fendant had stricken "that portion of the answer where he
says the shortage was 487 gallons."

Assuming, for the sake of argument, this was a correct
ruling, it still left the substantial part of the testimony
aforesaid in. Then came the question, "Do you know what
that shortage was?" and the answer, "Yes." Whereupon,
the court said:

"That is a question for the jury. I don't understand
this gentleman put this stuff in this car. Counsel for plain-
tiff: I am talking about what he received. Court: Let
him state how much was in the car when he got it there. Q.

10. CARRIERS: loss in tran-sit: evidence.

Can you tell now, without refreshing your recollection, the total amount that was in the car, as called for by the invoices and freight bill?"

To this, the objection that it was incompetent was sustained. Whatever it is, it is clearly not immaterial; and, under the rule in *Campbell v. Park*, 128 Iowa 181, we must treat it as remaining in the record, for the purpose of passing upon whether verdict was rightly directed, and upon whether, with it in, such direction can be sustained. But even after that, plaintiff was asked: "How much did you receive?" No objection was made, and he answered: "I can't tell, without refreshing my memory. It was something like 4,400 or 4,500 gallons." Still later, after having taken the noon hour to advise himself, this occurred: "Q. How much did you receive in the 1906 shipment?" Defendant objects that this is incompetent, irrelevant, immaterial, and not pertinent to any issue in the case. The objection was *overruled*, and the witness answered, "3,320 gallons." Over like objection and ruling, he said that, as to the 1909 shipment, he received 4,170 gallons. And, in a sense, this point is ruled by *McNamara v. Chicago, R. I. & P. R. Co.*, 183 Iowa 577. There it was claimed that there could be no damage for delivering stock in defective condition where there was, as claimed, no evidence of the condition the stock was in when delivered to the initial carrier. But we held that this was not tenable if it appeared that the stock shipped, no matter in what condition shipped, was injuriously handled to its damage, subsequent to the shipping.

It seems to us to be undeniable that here was sufficient evidence of shortage, when coupled with what admissions the bills of lading would show, to send to the jury whether there was a shortage, and how large a one. See *Stutsman v. Des Moines City R. Co.*, 180 Iowa 524.

3a. What has been said applies equally to the overcharge claim. It, too, should have gone to the jury.

IV.   Attempts were made to show, by witnesses who most assuredly were competent to testify to the point, what the gravity of the oils shipped was, what the gravity test of it was; and this testimony was, among others, from the shipper and seller, who had had a lifetime of experience in the business.   And he stated he knew this gravity test, and without an intimation that he got it from an incompetent source.   His testimony that the test was 70 was stricken out.

He testified that the value and price under that test was 9½ cents a gallon.   Again, there was no intimation that he got this knowledge from any incompetent source, and everything points to it that he was competent to speak to it.   He gave other evidence as to value.   All of it was stricken from his deposition.   We are at some loss to understand why it was stricken.   It was error to strike it.

For the reasons stated, the judgment and order below is reversed.—*Reversed and remanded.*

LADD, C. J., EVANS, PRESTON, and STEVENS, JJ., concur.

SALINGER, J., does not vote on or express his own opinion on the matters set forth in Divisions 2-a and 2-b of this opinion.